[Civ. No. 33008.   Second Dist., Div. Five.   Sept. 19, 1969.]

GEORGE KOOP et al., Plaintiffs and Appellants, v. STRUC-
TURAL PEST CONTROL BOARD, Defendant and
Respondent.

Roger A. Kander for Plaintiffs and Appellants.

Thomas C. Lynch, Attorney General, and Kenneth Scholtz, Deputy Attorney General, for Defendant and Respondent.

REPPY, J.—This appeal is from a judgment of the superior court denying the petition of George Koop and Joseph Spiecker (hereinafter, Koop, Spiecker or petitioners) for a peremptory writ of mandate.[1] By this petition they sought to have the Structural Pest Control Board of the State of California (hereinafter, the board) directed to reinstate their licenses (which had been suspended after a hearing) and to have the registrar directed not to require any restoration bond.[2]

Petitioners argue both the unconstitutionality of, and the unconstitutional application of, certain laws and regulations assertedly relevant to the infractions. They also urge that the orders contained in the decision suspending Spiecker's field representative license for 15 days and Koops' operator license for 180 days, subject to three years' probation with the condition of a 30-day suspension, are harsh, arbitrary, and not in the furtherance of duty. They also contend that the requirement for restoration bonds made by the registrar was an abuse of discretion, or that such discretion was pre-empted by

---

[1]The petition and prayer stated that the proceeding was for an alternative writ of mandate (no mention of peremptory writ), for an independent hearing and judgment, and for an injunction against the requirement of a restoration bond. However, this was not actually sought, and the matter was presented to and treated by the court as a review of the findings and conclusions made by the board and the registrar to determine if a peremptory writ should issue. A stipulation was made that no evidence introduced at the administrative hearing had any relevancy to the mandate issues. What was intended as the full purport of this stipulation is not clear. However, the trial judge construed it to mean that he was to assume that the findings of fact were supported by the evidence, and the parties seem to have accepted this interpretation. So we will adhere to it.

[2]Since the drafting of this opinion we have noted the issuance of an opinion by Division Four of this District on the same subject with which we feel our opinion in the main harmonizes. See *Imperial Termite Control, Inc.* v. *Structural Pest Control Board*, Civil No. 33181, filed on August 19, 1969 [275 Cal.App.2d 685 (80 Cal.Rptr. 156)].

the decision of the board[3] because it did not recommend any restoration bonds.

## CONSTITUTIONAL QUESTIONS

■ Petitioners argue that the act has made a classification between structural pest control licensees and operators dealing with rodents and bugs, because the former must file reports whereas the latter need not. It is urged that the classification is unreasonable because reports in the latter category would be more vital since health rather than property hazards are involved. However, in response, it is noted that factors of human safety are involved in structural pest control when the stability and durability of buildings are threatened. Moreover, there is no showing that problems with rodents and bugs are as prevalent as those with structural infestors. Further, there is no indication in the legislation that the filing of reports in either category need be considered essential to eradication; but there is an indication in the structural pest control act that, as is generally known, having official reports of record in the wood pest category is important because of the frequent conditioning of transfers of improved parcels of real property on such records and the reliance of purchasers thereon. We note that under section 1990 (c) of the regulations (title 16, Cal.Admin. Code)[4] the name of the person ordering the report and the identity of the other party in interest are to be given in the report. Finally, the matter of report filing is but one aspect of the total pest control picture. We cannot say that the Legislature made an unreasonable classification. Moreover, it can be said that there is no true classification at all but simply a reasonable minor differentiation in requirements.

■ It is further claimed that an unequal tax levy has been effected because of the fact that a stamp purchased by the structural pest control operator from the board must be attached to a report being filed. However, given the circumstance that a constitutional classification exists, there is no basis for the claim of an unequal tax levy. Moreover, the requirement appears to be correlated strictly to defraying the cost of the report filing system. Finally, petitioners were not charged with failure to buy and use the stamps. Thus, this alleged constitutional question is not sufficiently pertinent to the matter at issue.

[3] Adoption of the decision proposed by the hearing officer.

[4] Future reference to sections of the regulations refer to title 16, California Administrative Code.

■ Petitioners additionally contend that the penalties imposed constitute cruel and unusual punishment for the infractions found. The contention is unmeritorious for the following reasons. The matter at hand is not in the criminal field. The penalties are partly regulatory. They involve no interference with liberty. In any event, the short periods of license suspension presage only minor economic losses. There was no showing that the cost of obtaining restoration bonds for the two-year period required[5] was confiscatory or exorbitant.

■ The next complaint is that the imposition of the penalties has effected a taking of property without payment of compensation. Although in one sense the right to earn a livelihood might be considered property, the penalty impositions which briefly interfered with that right are in the police power field; there is no compensable taking.

Petitioner's final constitutional contention is that the Legislature has improperly delegated authority to the board to suspend licenses where there has been no violation. However, all petitioners' complaint really amounts to is that there has been no violation and therefore that there is no right in the board to exercise the suspension power delegated to it.

In summation we agree with the board's position that neither are petitioners' points sufficiently relevant nor are their authorities sufficiently germane to be persuasive. In the absence of a clear and convincing demonstration that the challenged provisions of the act are arbitrary or are incapable of furthering a lawful purpose under the police power, they must be found to be constitutional. (*Williamson* v. *Lee Optical of Okla., Inc.*, 348 U.S. 483, 486-489 [99 L.Ed. 563, 571-573, 75 S.Ct. 461]; *Ferguson* v. *Skrupa*, 372 U.S. 726, 730-731 [10 L.Ed.2d 93, 97-98, 83 S.Ct. 1028, 95 A.L.R.2d 1347]; *Wilke & Holzheiser, Inc.* v. *Department of Alcoholic Beverage Control*, 65 Cal.2d 349, 358-364 [55 Cal.Rptr. 23, 420 P.2d 735].)

### PENALTY IMPOSITION AS UNREASONABLE OR ABUSE OF DISCRETION

Under this heading must be placed what amounts to an argument by petitioners that the *findings of fact* do not warrant the *conclusions of law as to violations* upon which the judgment imposing the penalties rests. Petitioners' position seems to be that any penalty would be arbitrary if there was

[5]See Business and Professions Code, section 8697.3.

no legal basis for it. Also under this heading comes petitioners' contention that the severity of the penalties is not commensurate with what they feel is the minor degree of seriousness of the infractions.

█ With respect to Koop, there is no merit in the claim that the findings do not support the violation conclusions.

The hearing officer concluded that Koop was subject to disciplinary action (Bus. & Prof. Code, § 8641) and therefore to license suspension (Bus. & Prof. Code, § 8620) because he had violated section 8516, subdivision (b) (7) of the Business and Professions Code and section 1990(g) of the regulations by not setting out in his report that there was evidence of dry-wood termite infestation in the substructure and attic walls of the home involved. Section 8516, subdivision (b) (7) says that there shall be set forth in the report information "regarding the substructure . . . [and] attic spaces . . . ." Section 1990(g) states that all reports "must . . . describe . . . [i]nfestations . . . or evidence thereof." Koop contends he was not required to include in his report that there was evidence of dry-wood termite infestation because, as found by the hearing officer, it was not known whether the evidence of such infestation in the *attic* reflected an *active infestation* or a *corrected past condition.* The code sections do not exempt past corrected conditions. Even more important, their purport requires that such an ambiguous item of evidence be reported as such. Finally, the hearing officer did not find that the condition in the *substructure* could have been a corrected past infestation. This applied only to the *attic.*

The hearing officer also concluded that Koop was subject to disciplinary action, and therefore to license suspension, because he had violated section 1990(h) (5) of the regulations by failing to set forth in his report a condition of *dry-rot damage* in the *mudsill* in the rear of the house. Section 1990(h) (5) states that all reports "must . . . describe . . . [c]onditions usually deemed likely to lead to infestation . . . including . . . [s]tructural members found to be structurally weakened by wood-destroying pests. . . ." Koop contends that the involved section only requires reports of conditions wherein structural members are weakened by action of wood-destroying pests, and that there was no finding that the mudsill[6] was structurally weakened. The finding was, in effect,

---

[6]There is no finding specifically saying that a mudsill is a structural member, but Koop claims no defect by reason of this. It is to be assumed that it is, as is generally known.

that the mudsill was *damaged*. This characterization is suffi-ciently synonymous with *weakened* to be acceptable. More-over, when the report omission finding is read in light of the conclusion which gives the number of the section violated[7] and in light of the wording of the pertinent specification in the accusation,[8] it is clear that the concept of weakened is im-plicit in the term damaged. Koop also contends that there is no finding that dry rot damage in the mudsill is likely to lead to infestation, and that the involved section only requires reports of conditions having that potential even when it involves a structural member which has been weakened. Al-though ''likely to lead to infestation'' is preliminary lan-guage in subparagraph (h), and although subparagraph (h) apparently is introductory to all of the succeeding subsidiary numerical paragraphs (1) through (8), nonetheless subpara-graph (h) does not logically introduce subparagraph (5). Rather, subparagraph (5) logically and adequately stands on its own as a direct afterpart of the original phrase making up section 1990 itself. That combination (1990 and subparagraph (5), with the wording in subparagraph (h) eliminated) would read simply: *All reports must describe structural members found to be structurally weakened by wood-destroy-ing pests.* Koop further contends (citing *Shively* v. *Stewart,* 65 Cal.2d 475 [55 Cal.Rptr. 217, 421 P.2d 65]) that for there to be a valid conclusion of law that the violations discussed above occurred, there must be at least a finding of negligence if not of deliberate wrongdoing, and that neither such finding was made. We will assume, *arguendo,* that such a requirement would apply to the type of violations here involved. Because it turns out to be unnecessary to do so, we refrain from pass-ing upon the merits of this contention. In each of the two instances the violation is that of not stating in the report a pest condition which existed in the house. The omission could be either failing to record a noticed condition or failing to notice the condition. Either way, negligence is implicit *in a finding of the omission.* The hearing officer did find that there was an omission to include pest information in the report. There was no fatal defect in the failure to state that Koop *negligently* failed either to notice the condition or to include mention of it in his report.

[7]Conclusion Number V.

[8]Paragraphs 18 and 25b of the accusation.

■ In light of the views just expressed, there is no basis for Koop's claim that the penalty meted out to him was arbitrary because it was based on faulty conclusions. As far as its harshness in relation to the two adjudicated violations is concerned, we cannot say as a matter of law that three years' probation with a 30-day-suspension condition was an abuse of the wide discretion reposing in the board in this area, particularly in light of the circumstance that there were double infractions and a previous violation. The requirement of the $8,000 restoration bond set up by the registrar is not a part of the decision. It is set up by statute (Bus. & Prof. Code, § 8697.3) as an automatic followup to be implemented by the registrar after any board decision which imposes a license suspension. Thus, in the instant case, there was no basis for the board to include this matter in its decision, and its adoption of the hearing officer's proposed decision (which appropriately contained no recommendation on this point) did not preclude the carrying out by the registrar of this administrative function. It was within the discretion of the registrar to evaluate the seriousness of the infractions which brought about the suspension and to determine at what amount within the minimum ($1,000) and maximum ($8,000) limitations specified by the code the bond should be set.[9] He set it at the maximum. We cannot say (absent a more significant showing from Koop) that setting the restoration bond at that figure (which was within the statutory limits) was an abuse of discretion. (*Tracy* v. *Contractors' State License Board,* 63 Cal.2d 598, 601 [47 Cal.Rptr. 561, 407 P.2d 865].) We note that Koop did put up the $8,000 bond and that, if he has kept it in force and has remained current on satisfying any claims, the limit of the two years, which the law states shall be the duration of the maintenance of the restoration bond,[10] will soon expire.

■ The contention of the arbitrariness of penalty or restoration bond requirements because of their stemming from a faulty conclusion has no merit as to one of the two violations adjudicated against Spiecker, but does as to the other.

As to the first item, Spiecker admits the technical infraction of failing to file an inspection report negative as to infestations. His only claim for lack of fact-finding support for the conclusion of a violation is the absence of the element of negligence. However, there was a supplemental finding to the

---

[9]See Business and Professions Code, section 8697.3.

[10]See Business and Professions Code, section 8697.3.

effect that Spiecker apparently had lost the report. The discussion on this subject pertaining to Koop applies also to Spiecker.

Turning to the second item, we note that the board found: that Spiecker was licensed as a field representative; that he was listed as an employee of Southern Counties Termite Control, Inc., (hereinafter, Southern Counties); that Southern Counties, acting by Spiecker, performed an inspection and issued a report therefor at a time when the license of Southern Counties was under suspension, that Spiecker had tried to make the inspection at a time when the license of Southern Counties was in effect; and that Spiecker was not particularly aware, later, that the license had been suspended. Spiecker argues the latter findings in mitigation. However, more fundamental is the circumstance that (although a field representative knowingly acting for an operator whose license has been suspended may be a violation) Spiecker was only charged in the accusation with a violation, as a licensed field representative, of section 8550, Business and Professions Code, providing that "[i]t is unlawful for any person to . . . act in the capacity of . . . a field representative . . . unless *he* is licensed. . . ." (Italics added.) (See paragraphs Nos. 11 and 23 of the Accusation.) Since the alleged violation found was not charged, Spiecker cannot be penalized for it.

We do not know, of course, how the board and registrar would have dealt with the failure of Spiecker to file a negative report (because it had been lost) as a sole violation. Conceivably, the board might not have suspended Spiecker's license, but only reprimanded him, in which event there could have been no restoration bond requirement. If the board would have suspended the license for the 15 days or less, that feature would be moot, since the suspension period has expired. All that would remain for possible revision would be the action of the registrar in requiring a $2,000 license restoration bond. In this connection, there is some question whether section 8697.3, Business and Professions Code, requires a *field representative* to file a restoration bond. The provision may be limited to *operators* because it provides that such a bond shall be *additional* to the regular bond called for by section 8697. This section states that each *operator* shall maintain a surety bond of $2,000. However, this point was not raised.

The judgment is affirmed as to Koop. The judgment is reversed as to Spiecker, and the superior court is instructed to issue a peremptory writ of mandate directed to the board

commanding it to set aside its order suspending Spiecker's license for 15 days and to reconsider the penalty imposed as to Spiecker; and directed to the registrar commanding him to set aside his requirement that Spiecker post a $2,000 restoration bond, and, if the board (in a reconsideration) reinstates any part of the license suspension, to reconsider the matter of a restoration bond.

Stephens, Acting P. J., and Aiso, J., concurred.