[Civ. No. 33181. Second Dist., Div. Four. Aug. 19, 1969.]

IMPERIAL TERMITE CONTROL, INC., et al., Plaintiffs and Appellants, v. STRUCTURAL PEST CONTROL BOARD et al., Defendants and Respondents.

686

Roger A. Kander for Plaintiffs and Appellants.

Thomas C. Lynch, Attorney General, and Clifford L. Schaffer, Deputy Attorney General, for Defendants and Respondents.

KINGSLEY, J.—Petitioners are a corporation licensed to do structural pest control work and two of its officers and employees. After an administrative proceeding by the respondent board and its officers, their respective licenses were suspended for a total of ten days. They duly sought administrative mandamus in the superior court where, after a hearing, the action of the respondents was sustained. They have appealed.[1] We affirm the judgment.

The original accusation in this matter alleged various acts of omission and commission with reference to six separate pieces of property. The charges as to three properties were dismissed in the course of the administrative proceeding and are not before us. We consider only the three charges as to which penalties were imposed and, as the parties have done, refer to them as they are referred to in the administrative

---

[1]The formal Notice of Appeal was executed only on behalf of the corporate petitioner. However, the Notice to Prepare Clerk's Transcript, executed by the same attorney and filed the same day, refers to the two individual petitioners as being ''appellants.'' In conformity with rule 1(a) of the California Rules of Court, and in light of the fact that rule 5(a) expressly permits a notice of appeal and a notice to prepare a clerk's transcript to be incorporated in a single document, we treat the appeal as being on behalf of all the petitioners in the trial court proceeding. We note that the disciplinary order involved also imposed penalties on other employees and officers of the corporation who did not join in the judicial proceeding and whose rights or liabilities are not herein involved.

order—"First Property," "Second Property," and "Fifth Property."

## I

In connection with the First Property an employee of the corporation made an inspection, wrote up his notes and delivered them to a secretary for transcription. She did not copy them accurately, with the result that the report sent to the client and filed with the board did not accurately represent the condition of the property.[2]

Petitioner corporation complains that it was penalized for this conduct purely on the basis of *respondeat superior* and contends that administrative penalties cannot be imposed on such a basis. The argument misses the point.[3] It was the duty of the employer to see that reports copied in its office were reviewed by someone able to detect errors before they were issued. Petitioner is being penalized for its own negligence in omitting the most obvious and elementary of internal management controls.

## II

As to the Second Property, the findings were that the company, acting through one employee, had issued an inspection report based on an inspection made by another employee, which report failed to indicate certain conditions and failed to recommend the correction of the omitted conditions;[4] and that the company, after receiving a contract to do some of the work indicated on its report, had issued a completion report without doing all of the work contracted for.

Except for the general attacks on the applicable statutes and regulations hereinafter discussed, petitioners do not contest the accuracy of the findings. They do contend that the employer was guilty, at the most, of simple negligence and urge that simple negligence is not a ground for disciplinary

[2]Petitioner interprets the facts as being simply one of inaccurate copying of a report itself accurate. We cannot be sure from the findings made by the hearing officer whether the handwritten original was or was not accurate. Since the action taken against petitioner corporation was correct on either theory, we accept, for the purpose of this opinion, the interpretation of the findings made by the petitioner.

[3]We do not, of course, imply that the argument would be valid if in point.

[4]The finding as to this property indicates that one matter was contained in the field report but not carried forward into the final report; whether or not the original report was incorrect in the other matters as to which the final report was inaccurate we cannot determine.

action.[5] We disagree. It is true, as counsel points out, that some of the statutory grounds for discipline require gross negligence, fraud or violation of law; but the matters herein involved are matters which lie in the control of a licensee, and as to which he is given no discretion. We see no reason to believe that the Legislature did not mean what it said in section 8641,[6] namely, that "Failure to comply with the provisions of this chapter, or any rule or regulation adopted by the board, . . . is a ground for disciplinary action."

## III

As to the Fifth Property, the finding was that the inspection report was inaccurate in that it failed to report any evidence of dry wood termites, although there were "pellets" indicating the presence of such termites.

Petitioners argue that "pellets" may indicate the presence of live termites or the fact that termites had previously been present although they were now dead. From this premise (which respondent does not dispute) they argue that the inspector here was guilty, at the worst, of bad judgment. The argument is without merit. The applicable statute[7] and regulation[8] clearly require the report to disclose "evidence" of infection. Under any possible view, the pellets were "evidence" of an infection and should have been reported. Whether or not any duty would have been violated if the recommendation for action, also required in the report, had recommended no action on the ground that the inspector had, in good faith, determined that the pellets were made by termites long since dead, we do not decide. The whole statutory scheme requires that the property owner, and the board be fully advised as to conditions found, so that the owner may make an intelligent decision as to what corrective or preventative work he desires. Clearly, the fact that termites had once infected an area is a matter that a reasonable owner should know, whether or not he decides to take action against other termites appearing in the area in the future.

---

[5] Counsel also incorporates, by reference, his argument as to *respondeat superior* liability; we incorporate by reference our answer as above set forth.

[6] All statutory references are to the Business and Professions Code unless otherwise indicated.

[7] Section 8516, subdivision (b).

[8] Structural Pest Control Board, rule 1990.

## IV

Petitioners make several general attacks on the constitutionality of the statutes herein involved.

 They argue a lack of equal protection, in that the provisions applicable to persons engaged in controlling wood-destroying pests and organisms are more strict than those applicable to other forms of pest control. But it is primarily for the Legislature to determine which businesses require regulation and the nature of that regulation. The existence of wood-destroying pests and organisms, and the measures appropriate to their control, are, usually, beyond the expertise of the individual property owner; but, in the climatic and geological condition of California, those pests and organisms represent a special and serious danger to property and to the health and safety of the occupants of property. By their very nature, the property owner is at the mercy of an ignorant, incompetent or dishonest operator in a degree far greater than he is when he is subjected to, or suspects, other forms of pestilence. We cannot say that the Legislature went beyond its proper sphere in subjecting petitioners to the kind of control herein involved.

 The second ground of attack is that the statute grants to the board too broad a delegation of power to make supplementary regulations. But they refer to section 11374 of the Government Code,[9] which they admit governs the action of this board in adopting regulations and which section, we think, adequately establishes a legislative standard sufficient to escape the charge of unconstitutional delegation.

Petitioners also object that the statute requires certain fees to be paid by them, which fees are not required of other kinds of pest control operators, and which fees are the source of funds for the support of the entire Structural Pest Control Board's operations. But petitioners are not herein being disciplined for nonpayment of any fees. They may not raise a constitutional issue not pertinent to the case at bench.

## V

In addition to the ten-day suspension of their licenses, the

---

[9] "Whenever by the express or implied terms of any statute a state agency has authority to adopt regulations to implement, interpret, make specific or otherwise carry out the provisions of the statute, no regulation adopted is valid or effective unless consistent and not in conflict with the statute and reasonably necessary to effectuate the purpose of the statute.

"Any existing rules or regulations conflicting with this section are hereby repealed."

registrar of the board imposed a requirement on the corporate petitioner and its principal officer of an additional bond in the amount of $5,000.[10] The authority for requiring such a bond is contained in section 8697.3, which reads as follows: "If, after a hearing conducted in accordance with Chapter 5 (commencing with Section 11500) of Part 1 of Division 3 of Title 2 of the Government Code, a license is suspended or revoked upon the grounds set forth in Article 7 (commencing with Section 8620) of this chapter, the registrar shall require the applicant or licensee, as a condition to the issuance, reissuance or restoration of the license, to file a surety bond in the sum to be determined by the registrar based upon the seriousness of the violation, but which sum shall not be less than one thousand dollars ($1,000) nor more than eight thousand dollars ($8,000).

"The bond required by this section shall be in addition to the bond required by Section 8697 of this article.

"Each applicant or licensee required to maintain a bond of the type provided in this section shall post such bond with the registrar for a period of at least two years and during such additional time as there may be unsatisfied claims outstanding against the same."

The argument is that the amount of bond required is so excessive as to amount to an abuse of discretion. ▮▮▮ But this court is without power to review the extent of a penalty imposed by an administrative agency if the penalty is within the legislatively set limits. (*Tracy* v. *Contractors' State License Board* (1965) 63 Cal.2d 598, 601 [47 Cal.Rptr. 561, 407 P.2d 865].)

The judgment is affirmed; the stay previously ordered is vacated effective 60 days from and after the filing of this opinion.

Jefferson, Acting P. J., and Dunn, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied October 15, 1969.

---

[10]A $1,000 bond was required of petitioner Fech, a subordinate employee; the attack on the amount of the bond, obviously, is not raised on his behalf.