[S.F. No. 23093. In Bank. June 27, 1974.]

CLEAN AIR CONSTITUENCY et al., Petitioners, v.
CALIFORNIA STATE AIR RESOURCES BOARD, Respondent.

802

804

## COUNSEL

Mary D. Nichols, Paul, Hastings, Janofsky & Walker, Dennis H. Vaughn, Donald A. Daucher, Munger, Tolles, Hills & Rickershauser and Dennis C. Brown for Petitioners.

Evelle J. Younger, Attorney General, Carl Boronkay, Assistant Attorney General, Jeffrey C. Freedman and Alan Robert Block, Deputy Attorneys General, for Respondent.

## OPINION

**MOSK, J.**—This is a proceeding for an original writ of mandate brought against the California State Air Resources Board (hereinafter ARB) by an association of individuals and groups concerned with implementing clean air legislation, together with two manufacturers of pollution control devices and a private citizen residing in Los Angeles County.

The issue is whether the ARB has authority to delay its oxides of nitrogen pollution control program for the stated reason of conserving gasoline during the energy crisis. Initially, we are called upon to determine whether this court may assume original jurisdiction in mandamus under article VI, section 10, of the California Constitution. If jurisdiction exists, we must consider whether the Legislature has conferred discretionary authority upon the ARB to delay the program for the control of atmospheric emissions of oxides of nitrogen (hereinafter NOx) and, if such discretion exists, whether the ARB may exercise this discretion to help alleviate the energy crisis. We examine those sections of the Health and Safety Code and related statutes which authorize the ARB to administer a statewide program to equip 1966 through 1970 model year vehicles (hereinafter the subject

vehicles) with devices to control vehicular emissions of NOx (Health & Saf. Code, §§ 39107.6, 39177.1-39177.4; Veh. Code, § 4602, hereinafter NOx legislation).

For the reasons discussed *infra* we hold that this court is entitled to exercise original jurisdiction in mandamus under article VI, section 10, of the California Constitution; that the ARB has limited discretionary authority to delay the NOx program; but that it has no authority to delay this program·for reasons related to the energy crisis. Accordingly, petitioners are entitled to a peremptory writ vacating the ARB's action to delay the installation programs and ordering the ARB to implement and enforce the NOx installation program in the manner directed by statute.

In 1971, the Legislature amended the Mulford-Carrell Air Resources · Act (Stats. 1967, ch. 1545, p. 3680) to require the ARB to set standards for devices which would significantly reduce the emission of NOx from the exhaust of certain 1966 through 1970 model year vehicles and to establish a program for the installation of pollution control devices. (Health & Saf. Code, § 39107.6.) Generally, this amendment (Stats. 1971, ch. 1507, p. 2978) provides for the installation of NOx control devices in every subject vehicle and empowers the ARB to establish by regulation a schedule of installation. (Health & Saf. Code, § 39177.1.) The legislation states that certificates of compliance shall be required upon initial registration and transfer of ownership of subject vehicles (Health & Saf. Code, § 39177.1, subd. (b)(2)), and shall be required for all subject vehicles upon renewal of registration in 1973 (Health & Saf. Code, § 39177.1, subd. (b)(3)). In addition, the NOx legislation authorizes the ARB to delay the latter requirement "for extraordinary and compelling reasons only"; in such event, the ARB may adjust its schedule of installation but must immediately report to the Governor and the Legislature. (Veh. Code, § 4602, subd. (b).)

After an initial delay caused by a shortage of mechanics and pollution control devices, the ARB established its first schedules for the installation program. One schedule, corresponding to the certificate provision of section 39177.1, subdivision (b)(2), required the mandatory installation of NOx devices upon the transfer of ownership and initial registration of subject vehicles. The dates on which this requirement would take effect depended upon geographical area and ranged from February 1 to June 1, 1973.

In addition to the geographical schedule, the ARB adopted a schedule

for the installation of devices based on the last arabic number on the license plates of subject vehicles. By this schedule, the ARB required all owners of subject vehicles to install pollution control devices between the dates of June 1973 and April 1974. This schedule facilitated the section 39177.1, subdivision (b)(3), requirement for certificates upon renewal of registration. Although the code section required certificates of compliance upon renewal of registration for the year 1973, the ARB delayed the certificate requirement under the "extraordinary and compelling reasons only" clause of Vehicle Code section 4602 until renewal of registration for the year 1975. Apparently, this date was intended to correspond to the declared California goal of pure air with no significant adverse effect from motor vehicle air pollution by 1975. (Health & Saf. Code, § 39081, subd. (d), added by the Pure Air Act of 1968, Stats. 1968, ch. 764, § 8, p. 1467.)

In June 1973 the ARB again deferred the installation program. The board had received data which indicated that some devices might cause engine damage. Consequently, the ARB suspended the announced installation schedules pending a reconsideration of its decision to accredit some NOx devices. (See Cal. Admin. Code, tit. 13, § 2002, subd. (a).) Shortly thereafter, however, the ARB adopted new schedules which would have required the installation of NOx devices by the end of 1974.

On December 19, 1973, the ARB voted for a third time to delay the installation program. (Resolution No. 73-27G.) The ARB justified this action on a theory that the energy crisis presented an extraordinary and compelling reason for further delay. Accordingly, it resolved to postpone the installation program based on the license plate schedule by one year and to defer the installation of devices upon initial registration and transfer of ownership (the geographical schedule) from January 1, 1974, to April 1, 1974.[1] In accordance with the one-year delay of the license plate schedule, the ARB deferred the requirement of certificates of compliance upon renewal of registration from 1975 to 1976. The effect of the new geographical schedule was to postpone the installation requirement upon initial registration and upon transfer of ownership in rural areas by three months.[2]

According to the ARB's staff report, this delay will result in the emis-

---

[1] Since this three-month period has now expired, the question of the validity of the ARB's action in this limited respect is moot.

[2] The portion of the geographical schedule which pertained to the three major air basins remained unchanged.

sion of an additional 100 tons of NOx per day from 1966-1970 model year vehicles in 1974 and 30 tons per day in 1975. In contrast to these statistics, the resolution will prevent an increase in gasoline consumption of approximately .5 percent in 1974 and .13 percent in 1975.

*The Writ of Mandate*

The Supreme Court has original jurisdiction in mandamus pursuant to article VI, section 10, of the California Constitution, and will exercise that jurisdiction in appropriate cases when "the issues presented are of great public importance and must be resolved promptly." (*County of Sacramento* v. *Hickman* (1967) 66 Cal.2d 841, 845 [59 Cal.Rptr. 609, 428 P.2d 593]; *Mooney* v. *Pickett* (1971) 4 Cal.3d 669, 675 [94 Cal.Rptr. 279, 483 P.2d 1231].) If these criteria are satisfied, the existence of an alternative appellate remedy will not preclude this court's original jurisdiction. (Cal. Civil Writs (Cont.Ed.Bar 1970) § 5.39, p. 91; see *Acton* v. *Henderson* (1957) 150 Cal.App.2d 1, 7 [309 P.2d 481].)

The present case presents a question of great public importance which must be resolved promptly: whether the ARB has authority to delay the NOx program because of the energy crisis. If this program is delayed pursuant to the ARB's resolution and emergency regulations, the result will be the production of an additional 100 tons of NOx per day to pollute the air of California.

The Legislature has underscored the public significance of the pollution control device program. In the urgency section of the NOx act, the Legislature declared that the 1966 through 1970 vehicles do not eliminate enough of the oxides of nitrogen to insure the health and safety of the majority of California's citizens. Because oxides of nitrogen are "dangerous substances," the Legislature declared its desire that "such devices [be] installed on most of such passenger vehicles within the shortest time possible." (Stats. 1971, ch. 1507, § 8, p. 2981.)

Finally, the new delay may cause the emergence of an inadequate supply of interested manufacturers and devices when and if the program resumes. According to the declarations of several accredited device manufacturers who are plaintiffs in this action, they will lose substantially all their investments in the NOx device program if the program is delayed. Suppliers of component parts for these devices and distributors of the finished product

are alleged to be experiencing similar difficulties. Consequently, their continued participation in the program is seriously endangered.[3]

■ The writ of mandate is appropriate to review the actions of the ARB. The courts may rely upon mandamus under Code of Civil Procedure section 1085 to review the validity of a quasi-legislative action. (Cal. Civil Writs (Cont.Ed.Bar 1970) § 5.37, p. 89.) If an administrative agency has exceeded its authority in the exercise of its quasi-legislative powers, a court may issue a writ of mandate. (See *Griffin* v. *Board of Supervisors* (1963) 60 Cal.2d 318 [33 Cal.Rptr. 101, 384 P.2d 421]; *Manjares* v. *Newton* (1966) 64 Cal.2d 365 [49 Cal.Rptr. 805, 411 P.2d 901].)

*Discretionary Authority to Delay the NOx Program*

On three occasions, the ARB has assumed discretionary authority to delay the NOx pollution control device program which was enacted by the Legislature as an urgency statute. (Stats. 1971, ch. 1507, § 8, p. 2981.) ■ Without passing on the validity of the ARB's exercise of discretion in each instance, we believe, as a general proposition, that the NOx legislation confers a limited discretionary authority upon the ARB to delay the NOx installation program by postponing the requirement for certificates of compliance upon renewal of registration and by making corresponding adjustments in the geographical and license plate schedules by which this program is implemented.

The ARB may postpone the requirement that owners of subject vehicles file certificates of compliance upon renewal of registration and may defer the statewide license plate schedule by which this requirement is satisfied when "extraordinary and compelling reasons" justify this action. (Veh. Code, § 4602, subd. (b).) Under Health and Safety Code section 39177.1, subdivision (a), the ARB has authority to adopt installation schedules by which subject vehicles are required to be equipped with NOx devices. These schedules must facilitate the execution of the requirement embodied in Health and Safety Code section 39177.1, subdivision (b)(3), which provides that "certificates of compliance shall be required upon renewal of registration for the year 1973, pursuant to Section 4602 of the Vehicle Code." Under Vehicle Code section 4602, subdivision (b), however, the ARB may defer the requirement for certificates of compliance upon renewal of registration for 1973 "for extraordinary and compelling reasons only." In such event, the board may adjust installation schedules adopted pursuant to Health and Safety Code section 39177.1, subdivision (a). There-

---

[3]Respondent raised an objection to the standing of the two out-of-state corporate petitioners. We need not reach the issue since there is no question of the standing of the other petitioners.

fore, we conclude that the ARB has authority to delay both the requirement for certificates of compliance upon renewal of registration and to adjust the license plate schedule adopted pursuant to section 39177.1, subdivision (a), if, in fact, extraordinary and compelling reasons for taking such action exist.

We also conclude that the ARB possesses an area of discretionary authority to adjust the geographical schedule by which subject vehicles are to be equipped with NOx devices upon initial registration and upon transfer of ownership. This conclusion emerges whether the source of authority to adopt the geographical schedule is Health and Safety Code section 39177.1, subdivision (a), as plaintiffs contend, or is Health and Safety Code section 39176.1, as defendant contends.

As stated previously, Health and Safety Code section 39177.1, subdivision (a), declares that the ARB shall require owners of 1966-1970 model year vehicles to install NOx devices in accordance with a schedule to be determined by regulation adopted by the board. Section 39177.1, subdivision (b), provides for the enforcement of subdivision (a) by requiring among other things that certificates of compliance shall be necessary upon change of ownership (i.e., upon initial registration and upon transfer of ownership and registration) (Health & Saf. Code, § 39177.1, subd. (b)(2)) and by requiring certificates upon renewal of registration for the year 1973 (Health & Saf. Code, § 39177.1, subd. (b)(3)). It may be argued that the provision to establish an installation schedule in subdivision (a) confers authority upon the ARB to adopt a geographical schedule in addition to the license plate schedule as a means of implementing primarily the requirement for certificates upon change of ownership in subdivision (b)(2) and secondarily the statewide requirement for certificates upon renewal of registration in subdivision (b)(3). As noted, these requirements are the means chosen by the Legislature to enforce the installation requirement of subdivision (a). Therefore, we conclude that the promulgation of the geographical schedule was authorized under section 39177.1, subdivision (a).

If section 39177.1, subdivision (a), is the source of the geographical schedule, then related code sections authorize the ARB to make adjustments in this schedule to provide for reasonable delays in the NOx installation program. As stated previously, the requirement for certificates upon renewal of registration may be postponed for extraordinary and compelling reasons. (Veh. Code, § 4602, subd. (b).) Moreover, if the ARB defers this requirement for appropriate reasons, it may make corresponding adjustments in the schedules it has adopted under Health and Safety Code section 39177.1, subdivision (a). (Veh. Code, § 4602, subd. (b).)

■ Since the ARB had authority to establish the geographical schedule under section 39177.1, subdivision (a), we hold that the ARB may make discretionary adjustments in this schedule to correspond to a delay in the statewide requirement for certificates of compliance upon renewal of registration. While the geographical schedule primarily serves to implement the requirement to install NOx devices upon change of ownership, this schedule and requirement are merely a phase-in step to statewide installation through the license plate schedule and the requirement for certificates upon renewal of registration. Therefore, it would be appropriate for the ARB to adjust both the license plate schedule and the geographical schedule when it has extraordinary and compelling reasons to delay the requirement for certificates upon renewal of registration.[4] When the Legislature enacted the NOx legislation, it chose to require the installation of accredited NOx devices for 1966 through 1970 model vehicles and to provide for the establishment of installation schedules in a separate statute, section 39177.1. If sections 39176 and 39176.1 were intended to apply to the NOx program, the Legislature might have been expected to incorporate these grants of authority into the NOx legislation instead of granting similar authority in a separate code section.

---

[4]The ARB argues that it has discretion to adjust the geographical schedule under Health and Safety Code section 39176.1. Under this provision, the board is authorized to establish a schedule of installation to be not less than one year whenever it requires the installation of motor vehicle pollution control devices pursuant to section 39176. Section 39176.1 empowers the ARB to designate geographical areas in which resident owners of vehicles shall be exempt from the installation requirement. In addition, section 39176.1 entitles the board to consider "all relevant factors" in establishing installation schedules.

It is not clear whether section 39176.1 applies to the NOx legislation, although both are found in article 5 of the Air Resources Act, as amended. (Health & Saf. Code, §§ 39107.6, 39177.1-39177.4, and Veh. Code, § 4602.) One of the enforcement provisions of Health and Safety Code section 39177.1, the central code section in the NOx legislation, provides that "certificates of compliance shall be required upon initial registration, and upon transfer of ownership and registration pursuant to Section 4000.1 of the Vehicle Code." Section 4000.1 states that the Department of Motor Vehicles shall require, pursuant to regulation of the ARB "adopted pursuant to Section 39176.1 of the Health and Safety Code," a certificate of compliance upon initial registration and upon transfer of ownership. Hence it may be contended that the geographical schedule which implements the change of ownership requirement was adopted by the ARB pursuant to section 39176.1.

Nevertheless, several arguments support the conclusion that section 39176.1 does not apply to the NOx legislation and, therefore, does not provide authority for the exercise of discretion in this case. The geographical schedule for the change of ownership installation program covers a time span which is less than one year. Consequently, it does not comply with the requirement of section 39176.1 to adopt installation schedules "to be not less than one year."

The NOx legislation seems to duplicate authority granted in sections 39176 and 39176.1 which were enacted prior to the NOx legislation. Section 39176 requires the installation of devices upon ARB accreditation, while section 39176.1 authorizes the ARB to set up installation schedules to implement the section 39176 requirement.

■ Sections 39176.1 and 39177.1 (NOx legislation) conflict with one another. While the former section permits the ARB to designate counties in which resident owners of vehicles shall be exempt from the installation requirement, the emergency NOx legislation requires every 1966 through 1970 model vehicle of under 6,001 pounds to be equipped with an NOx device meeting the standards established under Health and Safety Code section 39107.6. (Health & Saf. Code, § 39177.1, subd. (a).)

Other preexisting sections of article 5 of the Air Resources Act, as amended (Health & Saf. Code, §§ 39175-39184), do not appear to apply automatically to the 1971 NOx legislation. For example, section 39177, which is part of the 1968 act and interrelates with sections 39176 and 39176.1, gives the ARB limited discretion to exempt certain types of vehicles from compliance with installation requirements. Section 39177.2 of the new NOx legislation provides in part that any vehicle which is exempted by the ARB pursuant to section 39177 of the Pure Air Act may also be exempt from the installation requirements of section 39177.1, the NOx legislation. If the provisions of the preexisting law applied automatically to the NOx legislation, then the express statement in section 39177.2 incorporating section 39177 is superfluous.

It appears that the two installation programs, the NOx legislation and the preexisting sections of the Used Motor Vehicle Device Accreditation program (art. 5 of the Air Resources Act, as amended) coexist with one another but do not always interrelate without explicit incorporation. We itemize the following breakdown of the statutes:

| | Pre-NOx Legislation —Code sections of article 5 | NOx Legislation |
|---|---|---|
| Power to set standards for devices | § 39175, subds. (c) and (e) | § 39107.6 |
| Requirement of installation | § 39176 | § 39177.1, subd. (a) |
| Installation schedules | § 39176.1 | § 39177.1, subd. (b) |
| Standards for devices | § 39180 | § 39177.3 |
| Exemption from installment requirements | § 39176.1 | § 39177.2 |
| Discretion to delay the program | § 39176.1 | Veh. Code, § 4602, subd. (b) |
| Conditions for accreditation of device | § 39182 | § 39177.4 |

While some of the article 5 statutes are general and appear to apply across the board (e.g., § 39175, which states the general powers of the board) other article 5 statutes and NOx sections are mutually exclusive in parts and redundant in others (e.g., §§ 39180 and 39177.3; §§ 39182 and 39177.4). In view of these inconsistencies and the immediate conflict between sections 39176.1 and 39177.1, subdivision (a), we cannot assume that the Legislature intended section 39176.1 to apply to the NOx legislation.

*Vehicle Code Section 4602: The "Extraordinary and Compelling Reasons Only" Clause*

Having concluded that the ARB has an area of discretion to delay the NOx program under Vehicle Code section 4602, subdivision (b), we must next determine whether the energy crisis constitutes an extraordinary and compelling reason, within the meaning of that section, to postpone the program. ■ Plaintiffs contend that when the Legislature authorized the ARB to delay the NOx device program "for extraordinary and compelling reasons only" under Vehicle Code section 4602, it intended to limit the exercise of the ARB's discretion to reasons which relate to the effective implementation of the installation program and to the clearly expressed purposes of the Air Resources Act. We agree with this contention.

First, a delay to accommodate the energy crisis conflicts with the express purposes of the Air Resources Act and the NOx legislation. Second, administrative agencies exceed the scope of their authority when they promulgate regulations which contravene the purposes and the effective implementation of the governing legislation. Finally, the extraordinary and compelling reasons clause would constitute an invalid delegation of powers if its scope were not limited to reasons relating to the purposes of the act. In view of these considerations, we conclude that the Legislature intended to limit the ARB's discretion under section 4602 and to reserve for itself the power to determine fundamental policy matters, particularly an issue as basic and formidable as the competing values of clean air and energy.

*Purposes of the NOx Legislation.* In determining the breadth of discretion conferred upon the ARB by section 4602, we analyze it in accordance with accepted principles of statutory construction. ■ The courts must give statutes a reasonable construction which conforms to the apparent purpose and intention of the lawmakers. (*Anaheim Union Water Co.* v. *Franchise Tax Bd.* (1972) 26 Cal.App.3d 95 [102 Cal.Rptr. 692].) It is

fundamental in statutory construction that courts should ascertain the intent of the Legislature so as to effectuate the purpose of the law. (*Cal. Toll Bridge Authority* v. *Kuchel* (1952) 40 Cal.2d 43, 53 [251 P.2d 4]; *Dickey* v. *Raisin Proration Zone No. 1* (1944) 24 Cal.2d 796, 802 [151 P.2d 505, 157 A.L.R. 324].) Moreover, they should construe every statute with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness. Under these principles of construction, we must determine the breadth of discretion conferred upon the ARB under section 4602, subdivision (b), in accordance with the purposes of the NOx legislation and with reference to the whole law of which it is part, the Air Resources Act as amended.

Speedy installation of NOx devices on California motor vehicles is the apparent goal of the NOx legislation. Health and Safety Code section 39177.1, subdivision (b)(3), clearly manifests the Legislature's intention to require statewide installation on all 1966-1970 model year vehicles under 6,001 pounds by 1973. Moreover, in adopting the NOx legislation, the Legislature declared that "this act is an urgency statute necessary for the immediate preservation of the public peace, health or safety . . . and shall go into immediate effect" and that the installation of devices on most passenger vehicles should take place "within the shortest time possible." (Stats. 1971, ch. 1507, § 8, p. 2981.)

Preexisting sections of the Air Resources Act reinforce this sense of urgency and necessity for pollution control. In Health and Safety Code section 39010, the Legislature expressed its finding that the people of California have a primary interest in the quality of their physical environment and that atmospheric pollution has created a situation which is detrimental to the health, safety, welfare, and sense of well-being of the people of California. Again, in Health and Safety Code section 39081, subdivision (b), the Legislature declared its finding that the control and elimination of vehicular pollutants is of prime importance for the protection and preservation of the public health and well-being. Subdivision (d) of the same section expresses the Legislature's intent to achieve an atmosphere with no significant, detectable adverse effect from motor vehicle air pollution on health, welfare, and the quality of life and property by 1975.

Aside from the purpose to obtain speedy installation of NOx control devices, the Legislature was manifestly concerned with both the effectiveness of the devices and with the effective implementation of the installation program. Health and Safety Code section 39107.6 provides that the ARB should establish standards for exhaust emission devices which are

necessary and technologically feasible to carry out the purposes of the Air Resources Act and that the primary consideration should be "the greatest possible reduction of oxides of nitrogen." Once standards are set and the devices have been accredited, the NOx legislation provides for vehicle inspections, certificates of compliance, and any other authorized means of enforcement that the ARB, the Department of Motor Vehicles, and the Highway Patrol find practicable. (Health & Saf. Code, § 39177.1, subd.(b).)

█ From the foregoing, it appears that three primary goals of the NOx legislation are speedy installation of devices, substantial reduction of NOx pollution, and the effective enforcement of emission control requirements. Concern about gasoline consumption is not mentioned in the legislation and bears no relationship to these goals. As the ARB has recognized, the Legislature enacted the NOx program with the knowledge that pollution control devices consume gasoline.[5] Moreover, the ARB was created not to coordinate a program for the conservation of energy but to "provide a single state agency for the administration, research, establishment of standards, and the coordination of air conservation activities carried on within the state." (Health & Saf. Code, § 39013.) Therefore, we conclude that the ARB's action violates the NOx legislation's primary goal of speedy and effective purification of the atmosphere.

*Scope of ARB's Authority.* █ An administrative agency cannot promulgate regulations which conflict with the purpose of the governing legislation. Under Health and Safety Code section 39175, the ARB must adopt rules and regulations in accordance with the provisions of the Administrative Procedure Act of the Government Code. Government Code section 11374 provides: "Whenever by express or implied terms of any statute a state agency has authority to adopt regulations to implement, interpret, make specific or otherwise carry out the provisions of the statute, no regulation adopted is valid or effective unless consistent and not in conflict with the statute and reasonably necessary to effectuate the purpose of the statute." (See also *Desert Environment Conservation Assn.* v. *Public Utilities Com.* (1973) 8 Cal.3d 739, 742-743 [106 Cal.Rptr. 31, 505 P.2d

---

[5]In a staff report dated April 18, 1973, for example, the ARB states that in accrediting NOx devices, criteria imposed upon the board include such factors as safety, increase in other emissions, *adverse effects on vehicle performance,* durability, marketing capability, maintenance requirements, and financial and public interest factors. It then notes that "increased fuel consumption is not included in the category of adverse effects. The original law assumed [the NOx device] would be used with its accompanying fuel penalty."

223]; *Rosas* v. *Montgomery* (1970) 10 Cal.App.3d 77, 92 [88 Cal.Rptr. 907, 43 A.L.R.3d 537]; *Imperial Termite Control, Inc.* v. *Structural Pest Control Bd.* (1969) 275 Cal.App.2d 685, 689 [80 Cal.Rptr. 156].)

In view of section 11374, we cannot interpret the extraordinary and compelling reasons clause to empower the ARB to postpone the NOx program. The Legislature conferred upon the ARB authority to implement a program for the speedy and effective eradication of NOx pollution. In accordance with this goal, the ARB had authority to accredit NOx control devices, to establish schedules for the installation of such devices, and to coordinate enforcement activities with the Department of Motor Vehicles and the Highway Patrol. Section 11374 requires the ARB to perform these tasks through regulations which do not conflict with the statute and which are reasonably necessary to effectuate the purpose of the legislation. By the same token, section 11374 prohibits the ARB from exercising its discretion under the compelling and extraordinary reasons clause when the delay is not necessary to facilitate the purposes of the NOx legislation. ▋ Since the ARB's most recent postponement of the urgent NOx program does not effectuate and is not consistent with the goals of speedy installation of accredited devices, substantial reduction of NOx emissions, and effective enforcement of emission control requirements, the ARB's decision to delay the program exceeded the scope of its authority under section 11374.[6]

*Delegation of Powers.* ▋ If Government Code section 11374 or legislative intent does not confine the scope of Vehicle Code section 4602 to extraordinary and compelling reasons relating to the purposes and goals of the Air Resources Act, then section 4602 would constitute an unconstitutional delegation of powers. (See *Imperial Termite Control, Inc.* v. *Structural Pest Control Bd.* (1969) *supra,* 275 Cal.App.2d 685, 689.) ▋ An unconstitutional delegation of power occurs when the Legislature confers upon an administrative agency the unrestricted authority to make fundamental policy determinations. (*Kugler* v. *Yocum* (1968) 69

---

[6]Of some analogy in this connection are the several "impoundment" cases recently decided in federal courts. In varying statutory contexts the courts held the executive branch of government cannot whimsically, or even for what it deems sufficient cause, refuse to execute provisions of a congressional act. See, e.g., *Community Action Prog. Exec. Dir. Ass'n. of N.J., Inc.* v. *Ash* (D.N.J. 1973) 365 F.Supp. 1355; *Commonwealth of Pennsylvania* v. *Lynn* (D.D.C. 1973) 362 F. Supp. 1363; *National Coun. of Com. Mental H. Ctrs., Inc.* v. *Weinberger* (D.D.C. 1973) 361 F.Supp. 897; *Local 2677, American Fed. of Gov. Emp.* v. *Phillips* (D.D.C. 1973) 358 F.Supp. 60; *Berends* v. *Butz* (D.Minn. 1973) 357 F. Supp. 143, 156.

Cal.2d 371 [71 Cal.Rptr. 687, 445 P.2d 303]; *Knudsen Creamery Co.* v. *Brock* (1951) 37 Cal.2d 485, 493 [234 P.2d 26]; *Wilke & Holzheiser, Inc.* v. *Dept. of Alcoholic Bev. Control* (1966) 65 Cal.2d 349, 369 [55 Cal. Rptr. 23, 420 P.2d 735].) To avoid such delegation, the Legislature must provide an adequate yardstick for the guidance of the administrative body empowered to execute the law. (*Am. Distilling Co.* v. *St. Bd. of Equalization* (1942) 55 Cal.App.2d 799, 805 [131 P.2d 609]; *Harris* v. *Alcoholic Bev. etc. Appeals Bd.* (1964) 228 Cal.App.2d 1, 6 [39 Cal.Rptr. 192]; *In re Porterfield* (1946) 28 Cal.2d 91, 111 [168 P.2d 706, 167 A.L.R. 675].) Underlying these rules is the belief that the Legislature as the most representative organ of government should settle insofar as possible controverted issues of policy and that it must determine crucial issues whenever it has the time, information and competence to deal with them. (Jaffe, Judicial Control of Administrative Action (1965) pp. 41, 85.) The extraordinary and compelling reasons clause violates these principles unless it is limited to reasons which relate to the purposes and goals of the Air Resources Act.

As the present case illustrates, the respondent interprets Vehicle Code section 4602 in a manner which permits it to make legislative decisions. When the Legislature enacted the Air Resources Act and the NOx legislation, it concluded as a matter of fundamental policy that urgent action against automobile pollution was essential for the health of California's residents. In effect, it made clean air a higher priority than the concern for fuel consumption, the problem of rising costs in transportation, or the economics of the automobile industry.[7] After making this policy determination, the Legislature directed the ARB to establish a program which would accomplish the goal of pollution control. In response, the ARB determined that urgent action against the energy crisis was essential for the economic well-being of the state. In effect, its action to delay the NOx program for one year inverted the priorities by making energy consumption loftier in significance than concern for clean air. In other words, when the ARB postponed the NOx legislation, it made the same kind of fundamental—though contrary—policy determination the Legislature had made when it enacted the program in the first instance.

Respondent fails to explain why the ARB made this decision instead

---

[7]The fundamental nature of the Legislature's concern for environmental protection is emphasized by Public Resources Code section 21000, subdivision (g), which states: "It is the intent of the Legislature that all agencies of the state government which regulate activities of private individuals, corporations, and public agencies which are found to affect the quality of the environment, shall regulate such activities so that the major consideration is given to preventing environmental damage." (See also *Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247 [104 Cal.Rptr. 761, 502 P.2d 1049].)

of the Legislature. During the 1973 Regular Session the Legislature considered and failed to enact at least five proposals to delay the NOx program. (Sen.Bill No. 824, Apr. 23, 1973; Sen.Bill No. 825, Apr. 23, 1973; Assem.Bill No. 1964, Apr. 30, 1973; Sen. Concurrent Res. No. 52, May 16, 1973; Sen.Bill No. 1424, June 19, 1973.) As these bills suggest, the Legislature has the time, information, and competence to consider the issue of postponement; there is no valid justification for the ARB to act in the Legislature's stead.[8]

The extraordinary and compelling reasons clause as interpreted by the state cannot qualify as a sufficient legislative standard for administrative guidance. Although the breadth of the standard may vary with the subject matter of the legislation, it must not enable an administrative agency to exercise greater discretion than that which is necessary for the fulfillment of the Legislature's purposes. (*Caminetti* v. *Pacific Mut. Life Ins. Co.* (1943) 22 Cal.2d 344, 364 [139 P.2d 908]; *In re Porterfield* (1946) *supra*, 28 Cal.2d 91, 110-111; 2 Cal.Jur.3d, Administrative Law, § 63, p. 285.) The ARB has power to delay the NOx program for any compelling reason arising out of human experience in order to set up and enforce an effective and speedy program for the eradication of harmful automobile emissions. With the primary goals of the NOx legislation as its guide, the ARB could perhaps delay the program under Vehicle Code section 4602 when, for example, devices cannot be installed because of a shortage of materials or mechanics, when significant problems arise in the administration and enforcement of the registration, certificate, and vehicle check requirements, or when the devices fail to control emissions effectively. Since the purposes of speedy installation, substantial reduction of NOx, and effective enforcement provide the ARB with enough flexibility to set up, administer, and even to reasonably delay the program in the interest of clean air and effective pollution control, the broad and virtually unlimited interpretation of Vehicle Code section 4602 for which the state contends is unnecessary and is violative of the separation of powers.

Since we conclude that Government Code section 11374 limits the extraordinary and compelling reasons clause, and that the Legislature intended the ARB to predicate the exercise of its discretion under this clause

---

[8]In the State of Maryland a special session of the Legislature was called to provide for emergency powers in connection with the energy crisis. The Legislature thereupon authorized the Governor to proclaim a state of emergency under which he could direct the "suspension and modification of existing standards and requirements affecting or affected by the use of energy resources, including those relating to air quality control . . . ." (State Government Administration (May 1974) p. 13.)

on reasons relating to the three primary goals of the NOx legislation, no problem arises under the separation of powers clause (Cal. Const., art. III, § 3.) Each time the ARB elects to defer the NOx program, it must justify the action in terms which relate to speedy installation, substantial pollution reduction, or effective enforcement. This interpretation of Vehicle Code section 4602 enables the ARB to exercise enough discretion to carry out the broad purposes of the Air Resources Act, and still reserves to the Legislature as the most representative organ of government the right to make those crucial policy determinations for which it has competence, information, and time. (Davis, Administrative Law (3d ed. 1972) pp. 92-93.)

Because we interpret the scope of the extraordinary and compelling reasons clause under Vehicle Code section 4602 in light of Government Code section 11374, and because a narrow interpretation of the clause avoids constitutional problems under the separation of powers clause, the ARB must justify delays under section 4602 by reference to the three primary goals of the NOx legislation and the Air Resources Act. Since the concern over the energy crisis does not relate to these goals, we conclude that the ARB had no power under section 4602 to postpone the program.[9]

Let a peremptory writ of mandate issue directing the respondent to vacate ARB Resolution No. 73-27G and Emergency Regulation amending

---

[9]Respondent also contends that Health and Safety Code section 39176.1 empowers the ARB to delay the NOx program. That section provides in part: "In establishing installation schedules and areas exempted from installation, the board shall consider all relevant factors, including the burden of enforcement on the Department of the California Highway Patrol and the Department of Motor Vehicles, the need for rapid installation of the devices in order to preserve and protect the public health, and the existing ambient air quality in each area." According to the state, "all relevant factors" empowers the ARB to postpone the NOx program because of the energy crisis.

Even if this code section applies to the NOx legislation (see fn. 4, *ante*) it does not authorize the ARB to delay the installation programs in this instance. We interpret the phrase "all relevant factors" to mean those circumstances which relate to the purposes and goals of the NOx legislation. The same considerations under Government Code section 11374 and the separation of powers clause that applied to the extraordinary and compelling reasons clause of Vehicle Code section 4602 apply to the "all relevant factors" clause of section 39176.1. In addition, section 39176.1 states that the factors must be "relevant," and provides specific examples all of which relate to the primary goals of speedy installation, effective reduction of pollution, and enforcement. Since, as a matter of construction, "particular expressions qualify those which are general" (Civ. Code, § 3534), we interpret "relevant factors" in light of the specific examples and conclude that this phrase must relate to the purposes of the NOx legislation. Under this interpretation, section 39176.1 would not permit the ARB to justify its postponement because of the energy crisis.

California Administrative Code, title 13, section 2008, subdivisions (a), (b), and (d) filed December 28, 1973, and to implement and enforce the NOx installation program in the manner set forth in the NOx legislation.

Wright, C. J., McComb, J., Tobriner, J., and Burke, J., concurred.