[No. H033044. Sixth Dist. July 28, 2010.]

FIRESIDE BANK CASES.

[No. H033198. Sixth Dist. July 28, 2010.]

SANDRA GONZALEZ et al., Petitioners, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
FIRESIDE BANK, Real Party in Interest.

COUNSEL

Kemnitzer, Anderson, Barron, Ogilvie & Brewer, Andrew J. Ogilvie, Carol McLean Brewer; Alexander Community Law Center, Scott C. Maurer; Law Office of Balam O. Letona and Balam O. Letona for Petitioners.

No appearance for Respondent.

Severson & Werson, Jan T. Chilton, Mark D. Lonergan and Regina J. McClendon for Real Party In Interest.

OPINION

RUSHING, P. J.—In these coordinated class actions challenging a lender's collection practices, the trial court denied all relief to, and eventually entered dismissals with prejudice against, all class members against whom the lender

had previously secured judgments in separate collection actions. The chief ground on which this ruling is challenged is that the unfair competition law (UCL), Business and Professions Code section 17200 et seq., empowered the trial court to disregard the judgments, or even grant affirmative relief from them, on a classwide basis. We hold that the UCL cannot be so understood. Since no other ground of relief is urged, we will affirm the orders and judgment from which the appeal is taken. We will deny the related writ petition as moot.

## BACKGROUND

This matter was previously before this court in *Fireside Bank v. Superior Court* (Oct. 21, 2005, H027976), review granted February 1, 2006, S139171, reversed in part by *Fireside Bank v. Superior Court* (2007) 40 Cal.4th 1069 [56 Cal.Rptr.3d 861, 155 P.3d 268]. The background of the case is suitably summarized in the Supreme Court's decision. (*Fireside Bank v. Superior Court, supra,* 40 Cal.4th at pp. 1075–1076.) It is enough here to observe that cross-complainant Sandra Gonzalez purchased a van under a conditional sales contract that was assigned by the dealer to cross-defendant Fireside Bank (Fireside). When she fell into arrears, Fireside repossessed the van and sent her a notice purporting to state the conditions on which she could cure the default and reinstate the contract. The notice, however, overstated the amount due by some $2,700, representing a credit to which she was entitled for unearned finance charges. When Gonzalez failed to cure, Fireside sold the van and sued her for the deficiency. She answered and cross-complained, asserting that by serving the defective redemption notice, Fireside had violated the Rees-Levering Motor Vehicle Sales and Finance Act (Rees-Levering Act; Civ. Code, §§ 2981–2984.4); that this precluded any recovery of deficiencies; and that by proceeding to collect deficiencies despite this violation Fireside had engaged in an unlawful business practice. (40 Cal.4th at pp. 1075–1076.)

The trial court granted Gonzalez's motion for judgment on the pleadings as against Fireside's complaint. It did so, however, at the same time that it granted her motion to certify her cross-complaint as a class action, and thus before any notice had been given to the class. The Supreme Court directed us to reverse the pleadings order as a violation of the rule against "one-way intervention." (*Fireside Bank v. Superior Court, supra,* 40 Cal.4th at pp. 1083–1089, 1093.) However it found no error in the order certifying the class. (*Id.* at pp. 1089–1093.)

Meanwhile Fireside had brought a collection action in Santa Cruz County against Patricia Lind, who in October 2007 filed a class action cross-complaint against Fireside in that county on claims similar to those of Gonzalez (the Lind action). The two matters were coordinated in Santa Clara County.

As pleaded in Gonzalez's second amended cross-complaint, the class claims included several allusions to Fireside's having already obtained judgments against some members of the class. A list of "[q]uestions of law and fact of common and general interest to the class" included "[w]hether Fireside or its agents obtained deficiency judgments from proposed class members based on defective Notices and whether Fireside collected or attempted to collect on such judgments, when it had no legal right to obtain such judgments or attempt to collect on them." A list of unlawful collection practices included "collection lawsuits and invalid judgments." It was alleged that "in the course of filing deficiency lawsuits," Fireside "filed affidavits . . . averring compliance with Rees-Levering," which affidavits "were false due to Fireside's defective Notices." Fireside was alleged to have accumulated "ill gotten gains" by, among other things, "collecting on deficiency judgments invalidly obtained." And the relief prayed for included "[r]estitution or damages paid to class members based on all money they paid on invalid deficiency judgments obtained by Fireside, together with interest and/or profits thereon," "[d]isgorgement of all profits . . . collected on . . . invalid deficiency judgments," and "[a]n injunction requiring Fireside to vacate all judgments entered against class members and dismiss all pending lawsuits."

The cross-complaint in the Lind action included allegations resembling those above. It further asserted that Fireside's unlawful business conduct included "trick[ing] courts into entering judgments against consumers on claims which have no merit." And it prayed for, among other things, an order "requiring [Fireside] to seek an order from each court in which it has obtained a judgment . . . setting aside that judgment."

On December 6, 2007, Fireside brought motions to strike all of these allegations from the two cross-complaints "insofar as they seek to overturn or bar Fireside from enforcing deficiency judgments it has previously obtained."[1] The grounds for the motion were stated as follows: "These deficiency judgments operate as *res judicata* and collateral estoppel, barring Gonzalez's claims on behalf of the judgment debtors in this action. Gonzalez, a stranger to those transactions and prior lawsuits, cannot now collaterally attack those judgments and obtain relief for the persons bound by them."

---

[1] The record does not include the motion to strike portions of the Lind cross-complaint. That motion is addressed, however, in a joint opposition to the two motions. Fireside's reply and the court's order also addressed both motions jointly.

In response to these arguments, cross-complainants contended that res judicata was inapplicable because these matters did not involve the same cause of action as any previously adjudicated matter, and that collateral estoppel could not justify the requested order because that doctrine required Fireside to demonstrate that the issues it sought to preclude had been actually litigated in a prior matter. Cross-complainants implicitly conceded that the court lacked the power to declare the judgments void, but argued that the UCL empowered it to order Fireside to (1) restore sums it had collected from judgment debtors, and (2) ask the rendering courts to set the judgments aside.

The trial court granted the motions, directing in its "Pretrial Order No. 1" that the challenged language be stricken from the two cross-complaints. Cross-complainants filed amended cross-complaints reflecting the stricken text in strikeout typeface.

Two judgment-debtor members of the Gonzalez class, Cathy Moore and Cristian Lopez, moved for leave to intervene in the action and for entry of a judgment against them. The stated rationale for the motion was that the order striking references to the judgments had effectively disposed of their claims and that the orders sought were necessary to facilitate appellate review. Fireside attacked these requests as "an attempt to manufacture an appeal where none can exist," arguing that the order was not appealable because the claims of other class members remained unresolved, and that the relief sought would offend various other rules. In their reply memorandum the moving cross-complainants urged the court to designate a subclass of affected class members.

In an order styled "Pre-trial Order No. 2," the court denied the request for intervention on the grounds that the movants had failed to submit a proposed pleading, as is generally required for "permissive" intervention, and had made no attempt to establish the kind of stake required for "mandatory" intervention. The court also concluded that the movants lacked standing to intervene on behalf of a subclass that had not been formally designated, and that the request to designate a subclass should have been made in the original moving papers, not raised for the first time in a reply memorandum. The court rejected the request for entry of a judgment on the ground that the movants had not addressed concerns about notice, including notice to the class, and no authority appeared for such an order under the circumstances shown.

At the hearing leading to this order, class counsel observed that the court's tentative denial had been expressly made without prejudice and confirmed the court's willingness to entertain a further motion seeking to cure the perceived procedural defects. Moore and Lopez then brought a second motion to intervene, including a motion to designate a judgment debtor subclass and

appoint them its representatives. It was accompanied by a proposed cross-complaint in intervention. Fireside opposed the motion on the ground, among others, that intervention was an inappropriate means to acquire appellate standing or jurisdiction and that the designation of a subclass would unduly complicate the case. The court denied the motion, stating that the movants' interests were "adequately represented by Sandra Gonzalez" and that the designation of a subclass "could lead to more problems and that it is premature under the rules pertaining to class actions."

Cross-complainants filed timely notices or amended notices of appeal as to the original order granting the motion to strike and succeeding orders. Thereafter the court approved a settlement of the class action excluding judgment debtors from any relief, and ultimately entered a judgment dismissing their claims "with prejudice." Cross-complainants filed a timely amended notice of appeal referring to these orders.

## I. *Appellate Jurisdiction*

Fireside contended in its original brief that the orders from which the appeal was taken were not appealable. This contention may have been colorable prior to the entry of a judgment dismissing all claims by judgment debtors, but it can hardly be maintained now. We have no doubt that the orders just described amount to an appealable adjudication of the rights of judgment debtor members of the claimant class in the Gonzalez action. The situation is different in the Lind action. There, no class had yet been certified when the original order was made striking the allegations seeking relief from judgments. The court eventually certified a class explicitly excluding persons "against whom Fireside obtained a judgment prior to the date of this order." Since this ruling has not been challenged, and the judgment ultimately entered does not purport to dispose of any of the judgment debtors in Lind, we discern no basis for appellate jurisdiction as to them. Insofar as their protective writ petitions might give us jurisdiction to consider their arguments on appeal, we will conclude, for reasons that will become apparent, that they are not entitled to relief.

As far as we can tell, concerns about appellate jurisdiction were the only reason for the motions seeking to designate a subclass of judgment debtors and to permit the intervention of individual judgment-debtor class members. Since those concerns seem to have been obviated by the entry of a final judgment, the disposition of those motions would appear to be moot. We will therefore dismiss the appeal insofar as it is taken from those orders.

## II. *Order Striking References to Judgments*

 The chief remaining question is whether the trial court properly granted Fireside's motion to strike all allegations specifically seeking relief

on behalf of persons against whom Fireside had obtained judgments. It must be acknowledged that the class setting of the order greatly complicates the required legal analysis. Ordinarily a defense of res judicata or collateral estoppel (claim or issue preclusion) must be affirmatively raised, and the conditions for its operation demonstrated, by the party asserting it—here, Fireside. Nor are these conditions necessarily easy to establish. In the case of claim preclusion, it must appear that the judgment adjudicated the " 'same cause of action' " as is asserted in the second matter. (*Ferraro v. Camarlinghi* (2008) 161 Cal.App.4th 509, 530 [75 Cal.Rptr.3d 19], italics omitted.) In the case of issue preclusion, it must appear that the first matter presented some issue that is necessary to the later claim or defense, and that the issue was actually litigated and necessarily decided. (*Id.* at pp. 531–532.) Ordinarily these matters will not appear on the face of the pleading, but they may be ascertainable from materials subject to judicial notice. Thus if Fireside had obtained a judgment against Gonzalez, it might have been able to raise that judgment as a defense at the pleading stage by seeking judicial notice of relevant judicial records. But Fireside made no attempt to do this here; it simply asserted that *all* of the judgment-debtor class members' claims were barred by res judicata and collateral estoppel, without troubling to establish or even acknowledge the conditions for operation of those doctrines.

Cross-complainants alluded to this weakness in Fireside's motion when they observed that Fireside had not shown that the present matter involved the "same cause of action" as any of the collection matters or that any dispositive issue was *"actually litigated"* in those matters. But the cross-complaints themselves strongly suggested that at least the latter condition was present with respect to the issue whether Fireside had complied with the Rees-Levering Act. That is, it was alleged in the Gonzalez cross-complaint that "in the course of filing deficiency lawsuits," Fireside had "filed affidavits . . . averring compliance with Rees-Levering," which affidavits "were false due to Fireside's defective Notices." This strongly implies, if it does not affirmatively show, that in at least some cases the question of compliance with the Rees-Levering Act was actually tendered in the collection matter, and was determined adversely to the class member in question. It might of course be open to individual members to show otherwise, but in this form the pleading raised a strong suggestion, at least, that critical issues were vulnerable to an assertion of issue preclusion.

The question then becomes whether cross-complainants had pled, or could plead, some basis on which to avoid the usual effect of the earlier judgments. As we have already acknowledged, individual members might be able to show that the conditions for preclusion were lacking. Moreover, it would be open to individual members to *attack* the prior judgments on various grounds. (See 8 Witkin, Cal. Procedure (5th ed. 2008) Attack on Judgment in Trial Court, § 1, p. 583 et seq.) But no attempt was made to do this below. Nor did

Fireside attempt to show, on a classwide basis, that no such attempts could succeed. Instead the issue was joined over one question: whether the judgment-debtor class members were entitled to relief *en masse* on the theory that the UCL rendered the judgments essentially irrelevant. Their argument—which is also their central argument on appeal—proceeds as follows: (1) The UCL empowers trial courts to "make such orders or judgments . . . as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition . . . or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." (Bus. & Prof. Code, § 17203.) (2) Fireside secured the judgments in question by means of unfair competition, i.e., violations of the Rees-Levering Act. (3) Any sums collected on the judgments were therefore also the products of unfair competition. (4) Therefore the court has the power to restore such sums to cross-complainants despite the judgments in Fireside's favor, and to make any orders needed to accomplish that result.

Cross-complainants thus challenge the premise, which they attribute to Fireside, "that *res judicata* and collateral estoppel trump the broad remedial power authorized by the Legislature in the UCL." They cite general principles of statutory construction and specific statements in *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 573 [71 Cal.Rptr.2d 731, 950 P.2d 1086], that "when the Legislature has desired to limit UCL remedies, it has '*expressly provided*' [citation] for such limitation," and that courts "are not authorized to insert qualifying provisions not included, and may not rewrite the statute to conform to an assumed intention which does not appear from its language." (Italics added.) The Legislature, cross-complainants note, has not expressly declared that "*res judicata* or collateral estoppel limit the trial court's power to order relief pursuant to § 17203." Accordingly, they say, no such limitation can be imposed. To conclude otherwise would create a "safe harbor" from UCL liability, which "only the Legislature" can do.

This argument appears to rest on the idea that the law of judgments can only impede a claim under the UCL to the extent the Legislature has affirmatively manifested an intent that it do so. The broader premise would seem to be that when the Legislature grants broad remedial powers to a court, it intends that they be exercised free of the constraints of basic rules of procedure except as those rules have been expressly incorporated in the enabling statute. There is no obvious reason that such a principle should stop at the law of judgments. Other procedural bars to relief, such as the statute of limitations, would seem susceptible to the same logic. Indeed, if cross-complainants' argument is carried to its logical conclusion, once an unfair business practice is shown, *no* defense would be recognized except as expressly incorporated in the UCL.

■ One of the fundamental rules of statutory construction is that a law should not be applied in a manner producing absurd results, because the Legislature is presumed not to intend such results. ■ The wholesale abrogation of our laws of procedure is not a result to be lightly imputed to the Legislature. Nor does cross-complainants' argument follow, as they suggest it does, from the rule favoring the literal application of statutory language. That rule does not require that a statute be viewed as a legal island, entire of itself. Every statute must be enforced according to its terms, but its terms must be understood and applied in light of the whole body of law of which they are a part. (*Clean Air Constituency v. California State Air Resources Bd.* (1974) 11 Cal.3d 801, 814 [114 Cal.Rptr. 577, 523 P.2d 617].) "Indeed, we look beyond neighboring law to the law as a whole," for " '[t]o seek the meaning of a statute' " is to " 'discern' its 'sense . . . in the legal . . . culture' itself [citation], which, of course, encompasses the law generally." (*Peatros v. Bank of America* (2000) 22 Cal.4th 147, 167 [91 Cal.Rptr.2d 659, 990 P.2d 539], quoting *Kopp v. Fair Pol. Practices Com.* (1995) 11 Cal.4th 607, 672–673 [47 Cal.Rptr.2d 108, 905 P.2d 1248] (conc. opn. of Mosk, J.).)

■ The law governing the nature and effect of judgments is a fundamental part of the "culture" governing civil liability. It is implicated in every civil suit seeking to impose or avoid such liability. It has, to some extent, been codified. (See Code Civ. Proc., §§ 1908 [conclusiveness of judgments], 1908.5 [necessity of pleading], 456 [method of pleading], 1916 [impeachment of judicial records], 597 [trial of special defenses including "that the action is barred . . . by a prior judgment"]; Evid. Code, § 639 [when not conclusive, judgment is rebuttably presumed to correctly determine rights].) And the legal "culture" against which every statute must be understood is not limited to other legislative enactments; it also includes the common law. (See *California Assn. of Health Facilities v. Department of Health Services* (1997) 16 Cal.4th 284, 297 [65 Cal.Rptr.2d 872, 940 P.2d 323] [statute is to be " ' "construed in light of common law decisions, unless its language ' "clearly and unequivocally discloses an intention to depart from, alter, or abrogate the common-law rule concerning the particular subject matter" ' " ' "]; cf. *Metropolitan Water Dist. v. Superior Court* (2004) 32 Cal.4th 491, 511–512 [9 Cal.Rptr.3d 857, 84 P.3d 966] [questioning breadth of this statement].)

■ The closest parallel we have found to cross-complainants' argument appears in *Woolley v. Embassy Suites, Inc.* (1991) 227 Cal.App.3d 1520 [278 Cal.Rptr. 719], where a party argued that by authorizing an injunction in certain specialized circumstances, without referring to the traditional requirements for issuance of injunctive relief, the Legislature had empowered trial courts to issue such a specialized injunction without finding those conditions. The reviewing court viewed this contention as an assertion that the special statute had impliedly effected a pro tanto repeal of the general laws governing injunctions. (*Id.* at p. 1527.) It declared that "a special statute will not be

construed to effect a repeal of a more general statute unless the two are irreconcilable and in direct conflict with each other" or "the later act gives undebatable evidence of an intent to supersede the earlier." (*Ibid.*) Applying these principles, the court found insufficient basis to conclude that the Legislature intended to exempt applicants from the traditional requirements for injunctive relief. (*Id.* at p. 1529.)

■ We find even less cause to suppose that the Legislature intended to free UCL litigants of the constraints ordinarily imposed on civil plaintiffs by the law of judgments. Cross-complainants have pointed to nothing in the legislative history that suggests such an idea was even remotely present in the legislative mind. Giving a prior judgment its normal effect in a UCL action does not "imply" an "exception" to the act or fashion a "safe harbor" from it. It simply recognizes a defense that is available to every civil defendant when the facts support it. We therefore reject cross-complainants' contention that the court below was empowered by the UCL to grant classwide relief to judgment debtors without a factual showing of grounds to avoid the judgments against them. Since no other basis for relief on their behalf was ever suggested, the court did not err by concluding that the UCL afforded no basis for the classwide affirmative relief they sought in this class action.

Cross-complainants have also suggested at various times that Fireside behaved *in this action* in an inequitable manner contributing to the entry of some of the judgments against affected class members. The chief complaint is that Fireside continued to pursue collection judgments against class members after representing to the trial court, through counsel in this matter, that it was not doing so. These representations were made in support of a request by Fireside to stay further proceedings in the class action while the order certifying the class, and the related order granting judgment on the pleadings of Fireside's claims against Gonzalez, was reviewed by this court. The court granted the stay, which persisted for over two years until the matter was remanded from the Supreme Court. Meanwhile, according to cross-complainants, Fireside continued to secure judgments against class members—judgments which might have been avoided had the matter proceeded as a class action.

It is possible that Fireside's conduct in this regard furnishes some basis for equitable relief from at least some of the judgments thus obtained. However, cross-complainants have never offered to amend their pleadings to assert any such claim. It is far from clear that such a claim, if asserted, could be determined on a classwide basis. While Fireside's conduct in the court below certainly furnishes a common element, its effect on individual claims may depend on additional factors that vary considerably from case to case. In any event the present record furnishes an insufficient basis on which to address any such questions.

## III. *Dismissal with Prejudice*

We are somewhat troubled by, and asked the parties to submit supplemental briefs concerning, the trial court's dismissal of the claims of judgment debtors, pursuant to settlement of the class claims "with prejudice." There was never an adjudication, and no basis for an adjudication, of any individual judgment-debtor class member's right to relief from the judgment against him, or his or her susceptibility to the preclusive doctrines asserted by Fireside. The real foundation for the order disposing of their claims appears to have been the absence of any demonstrated basis for their *classwide* adjudication. But that was true for both sides. Just as the judgment debtors could not establish a categorical right to relief in the face of the judgments, so Fireside could not establish, and made no attempt to establish, a categorical *inability* to establish such a right based on individual circumstances. All that is known is that Fireside obtained judgments against the affected class members, and that these judgments *may* furnish a defense to any claims those members might bring against Fireside.

We have concluded, however, that the recital "with prejudice" is not fatal to the orders and judgment under review as they affect judgment-debtor class members. For one thing this recital must be contrasted with the dismissal *"on the merits* and with prejudice" that the court entered with respect to Fireside's claims against the class representatives and the claims of "[s]ettlement [c]lass members" against Fireside. (Italics added.) The "[s]ettlement [c]lass" was defined to exclude judgment debtors. This distinction may thus reflect a recognition that the dismissal of the judgment debtors' claims did not reflect any disposition of their individual rights, if any, to avoid the effects of the judgments. The recital that their claims were disposed of "with prejudice" is significant chiefly as a reflection of the court's intention that its order have some preclusive effect on judgment debtors. Such preclusive effect appears entirely appropriate insofar as the judgment disposed of the claimed right to wholly disregard judgments under the authority of the UCL. But the preclusive effect of a prior judgment is determined by the court in which it is asserted, not the court that rendered it. (See *Cartt v. Superior Court* (1975) 50 Cal.App.3d 960, 969 [124 Cal.Rptr. 376] [rights of absent members to relitigate issues ostensibly determined in a class action are "not before the class action court"]; *id.* at p. 968, fn. 12, quoting Amendments to Rules of Civil Procedure (1966) 39 F.R.D. 69, 106 [" 'the court conducting the [class] action cannot predetermine the *res judicata* effect of the judgment; this can be tested only in a subsequent action' "].) With this understanding, the judgment before us appears free of demonstrated error.

## DISPOSITION

The writ petition (No. H033198) is denied as moot. The appeal is dismissed as moot insofar as it is taken from orders denying leave to intervene and refusing to certify a subclass consisting of judgment debtors. In all other respects the orders and judgment are affirmed. Costs to respondent.

Premo, J., and Elia, J., concurred.

A petition for a rehearing was denied August 25, 2010, and petitioners' petition for review by the Supreme Court was denied December 1, 2010, S186943. Kennard, J., and Corrigan, J., were of the opinion that the petition should be granted.