Filed 12/27/16  Certified for publication 1/25/17 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| CENTRAL SAN JOAQUIN WATER CONSERVATION DISTRICT, | C072218 |
| Plaintiff, Cross-defendant and Respondent, | (Super. Ct. No. 39201000234681CUMCSTK) |
| v. | |
| STOCKTON EAST WATER DISTRICT, | |
| Defendant, Cross-complainant and Appellant; | |
| CALIFORNIA WATER SERVICE COMPANY, | |
| Intervener and Appellant | |

California requires public owners of water conveyance facilities with unused capacity to make them available to others in return for "fair compensation."  In this long-simmering dispute between Central San Joaquin Water Conservation District (Central), which supplies surface water to agricultural customers, and Stockton East Water District

1

(Stockton East), which operates the conveyance system through which the water flows, the trial court was required to determine whether the compensation demanded by Stockton East for transporting (wheeling) Central's water was "fair" under the provisions of Water Code section 1811, subdivision (c). Stockton East sought a wheeling rate of approximately $40 per acre-foot of water, an amount sufficient to recover 38 percent of all costs of owning and operating the conveyance system, in which 38 percent of the water flow was for Central's benefit. Central disagreed and argued the rate should reflect the incremental costs directly resulting from the additional water flowing through the conveyance system, making use of the capacity that would otherwise go unused, a much lower rate.

The trial court found the Wheeling Statutes (Wat. Code § 1810 et seq.) must be read as a whole and the language read in light of the purposes and policies of the statutes to facilitate the voluntary exchange of water, noting that the Legislature could have provided for a pro rata cost allocation but chose to omit reference to any specific formula or methodology and instead set forth a number of factors that must be considered in setting a wheeling rate. In light of the statutory language, rates must be set on a case-by-case basis, and in this case, Stockton East failed to consider all of the appropriate factors, including incremental costs and the value of offsetting benefits from the wheeling. The rates set ran counter to an analysis of competitive pricing and violated the statutes' directive that such rates be reasonable.

Because the trial court's determination is supported by substantial evidence and correctly applies the relevant statutes, we shall affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Stockton East is a water conservation district that supplies surface water to farmers and three municipal entities, City of Stockton, San Joaquin County, and defendant in intervention California Water Service Company (Cal Water), who in turn supply water to residents and businesses. Stockton East is governed by Water Code section 74000 et seq.

2

and by special legislation passed in 1971 (Stats. 1971, ch. 819, as amended).[1]  Part of Stockton East's mandate is to develop water resources to reduce and control overdraft of groundwater stocks.

Central is also a water conservation district governed by section 74000 et seq., organized to deliver surface water to agricultural customers within its service boundaries. Central's source of water is a contract with the United States, allowing it to purchase up to 80,000 acre-feet of water annually from the New Melones Unit of the Central Valley Project, subject to availability.  To reach Central, water stored in the New Melones reservoir is wheeled through Stockton East's conveyance system.  There is no other feasible means for Central to access this surface water.

Central is not a member of Stockton East.  It is a third-party customer, purchasing Stockton East's conveyance services.  Cal Water is a California corporation providing municipal water services to areas of the City of Stockton and San Joaquin County.  Cal Water is one of Stockton East's customers.

**Construction of the Conveyance System**

Initially, Central and Stockton East proposed the construction of the conveyance system as a joint project.  Both ownership and costs of construction, operation, and maintenance of the conveyance system would be shared.  However, Stockton East ultimately decided to construct the conveyance system on its own, without Central's participation.

Construction began in the ;late 1980's and early 1990's.  The conveyance system is over 40 miles long and includes a dam, a tunnel, canals, improved natural creek channels, and a pipeline to transport water from the New Melones reservoir to Central's and Stockton East's service areas.  Stockton East built the conveyance system to be large

---

[1]  All further statutory references are to the Water Code unless otherwise designated.

enough to wheel water for Central and other entities, which would pay fees for the service.

Construction of the conveyance system cost approximately $65 million and was financed by issuance of certificates of participation, similar to bonds. Stockton East's urban customers, including Cal Water, the City of Stockton, and San Joaquin County, guaranteed payment of the certificates. The cost of operating and maintaining the conveyance system is over $1 million per year, and the cost of servicing the construction debt exceeds $2 million per year.

### The Wheeling Contracts

In 1990 and 1991 Stockton East and Central entered into contracts by which Stockton East would wheel water for Central through the conveyance system to Central's service area. The contract price was set at $21.15 per acre-foot of water. The rate was based on Stockton East's operation and maintenance costs, including debt service and Central's proportionate amount of water being wheeled.

Although a dispute arose between the parties over Central's payments under the contracts, Stockton East continued to wheel water for Central. In 2008 Stockton East informed Central that it was terminating the contracts effective January 1, 2009. As a possible resolution of the dispute, Stockton East proposed that it and Central consolidate. During those negotiations, the parties entered into a one-year contract under which Stockton East would wheel Central's water during 2009 for $5 per acre-foot.

Negotiations broke down, and in November 2009 Stockton East informed Central it would not wheel water for Central in 2010 under the terms of the 2009 contract. Central offered to pay Stockton East $5 per acre-foot for wheeling its water in 2010.

Stockton East rejected the offer. Instead, Stockton East calculated its fair compensation under the statutes to be $41.50 per acre-foot, based on a proportional allocation of the costs of the conveyance system, but offered to wheel for $21.15 per acre-foot. The latter amount reflected the price the parties negotiated in their original

4

1990 and 1991 contracts. Central rejected the offer and argued Stockton East could only charge for incremental costs directly arising from wheeling Central's water.

**Subsequent Litigation**

Central filed an action for declaratory relief against Stockton East, challenging the 2010 wheeling rate and seeking an injunction to prevent Stockton East from withholding wheeling services from Central during 2010 and requiring negotiations for a reasonable rate. The trial court issued a preliminary injunction ordering Stockton East to wheel Central's water during 2010 at $5 per acre-foot with any credits or adjustments to be made by the parties once a final rate was adjudicated. We upheld the trial court's judgment, concluding the trial court had not determined what fair compensation is, did not rule that Stockton East could only recover incremental costs, and did not abuse its discretion by issuing a preliminary injunction. (*Central San Joaquin Water Conservation District v. Stockton East Water District* (June 28, 2011, C064581) [nonpub. opn.].) Stockton East filed a cross-complaint for declaratory relief and quantum meruit. Cal Water filed a complaint in intervention.

In 2011 Stockton East adopted a wheeling rate for Central's water during the 2011 season. The rate was based on a strict proportional share of the costs of the conveyance system. Central filed a first amended complaint adding a challenge to the 2011 wheeling rate.

Following extensive oral argument, the court issued a statement of decision following a bifurcated court trial. After summarizing the facts and arguments of both parties, the court presented four findings.

First, after construing the applicable Wheeling Statutes and legislative history, the court found the setting of wheeling rates necessarily or reasonably includes consideration of the owner's incremental or marginal costs resulting from the purchaser's use, as well as consideration of the owner's capital, maintenance and replacement costs, the costs of supplemental power, and offsets for benefits not otherwise captured in the pricing. The

5

wheeling rates set by Stockton East in 2010 and 2011 were not reasonable since they failed to consider incremental costs and other factors.

Second, the court rejected Stockton East's contention that a conveyance system owner may compel a nonmember agency to pay a wheeling rate calculated on the basis of a strict proportionate share of capital, overhead, maintenance, and other fixed or ongoing costs. Under the Wheeling Statutes, those factors may be considered, but a conveyance owner may not simply total its costs and enforce a pro rata application in all cases. Although such a pro rata application may be permissible with a member agency, it is not reasonable to use this formula with a nonmember agency. Third, the court also rejected Central's interpretation of the Wheeling Statutes as requiring a conveyance owner to charge only its marginal or incremental costs.

Finally, the court determined that the Wheeling Statutes dictate that a conveyance system owner must act in a reasonable manner consistent with the requirements of law to facilitate the voluntary sale, lease, or exchange of water, which requires a consideration of the particular facts in each case. According to the court, the Wheeling Statutes "allow Stockton East to consider charges incurred by the owners, 'including capital, operation, maintenance, and replacement costs, [and costs of supplemental power].' However, Stockton East must consider also the fact that Central is not a member agency, and was not included in the decision to construct the [conveyance system]. Most importantly, the Wheeling Statutes taken together evince the Legislature's intention that the wheeling rates bear some resemblance to real world price setting—that is, a conveyance owner may not exploit a monopoly-type position *vis a vis* a non-member agency, but is required to set reasonable rates. In the context of this case . . . Stockton East's setting of reasonable rates must include consideration of the incremental costs incurred by reason of Central's use, and consideration of the cost of competitive alternatives (here, the price or cost to Central of pumping groundwater.)"

6

Accordingly, the court found substantial evidence did not support Stockton East's fair compensation determinations of 2010 and 2011. Since Stockton East's methodology was fundamentally flawed, a full evidentiary hearing would not be appropriate since no amount of evidence could overcome a fundamental flaw. The court deferred resolving the issue of reasonable credit for offsetting benefits, finding it an issue of fact.

The court found the Wheeling Statutes require rates to be determined in a manner to facilitate water transfers. However, the court rejected Central's interpretation that wheeling rates must always be less than the purchaser's cost to pump groundwater. The court found no such requirement and noted that such an interpretation may be inconsistent with the owner's right to fair compensation. Instead, the owner need only consider the purchaser's reasonable available alternatives, the cost to pump groundwater, along with other relevant factors. Under such a calculation, a wheeling rate could exceed the purchaser's cost to pump groundwater and yet still be fair and consistent with the Legislature's policy promoting water transfers.

The court concluded that Stockton East's 2010 and 2011 wheeling rates could not be upheld under the Wheeling Statutes. Following entry of judgment, Stockton East and Cal Water filed timely notices of appeal.

## DISCUSSION

### Standard of Review

Construing a statutory scheme such as the Wheeling Statutes presents a question of law. As such, we are not bound by the trial court's legal conclusions. (*International Engine Parts, Inc. v. Feddersen & Co.* (1995) 9 Cal.4th 606, 611-612; *Souza v. Lauppe* (1997) 59 Cal.App.4th 865, 871.) We determine the legislative intent behind the statute, turning first to the statutory language, the best indication of legislative intent. In interpreting the statute we give the words used their usual and ordinary meaning. If the language is clear and unambiguous we need go no further. (*Freedom Newspapers, Inc. v.*

7

*Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826; *Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798.)

However, the literal meaning of a statute must be in accord with its purpose. Literal construction of a statute should not prevail if it is contrary to the legislative intent apparent in the statute. (*Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 658-659.) We must give a statute a reasonable construction that conforms to the apparent legislative purpose and intent. (*Clean Air Constituency v. California State Air Resources Bd.* (1974) 11 Cal.3d 801, 813.)

Faced with unclear statutory language or a statute that does not provide definitions for specific terms, we may consider the statute's legislative history in ascertaining meaning. (*White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 572.)

### Applicable Wheeling Statutes

Central to the arguments of the parties and the trial court's findings are several statutes governing wheeling. Since 1980 it has been the declared policy of this state to facilitate the voluntary transfer of water. The Wheeling Statutes addressed a potential impediment to wheeling transfers. Public and private water rights holders who wanted to sell surplus water could do so only by agreement with the owners of conveyance systems. Otherwise, there was no practical way to move water from seller to buyer. However, some conveyance system owners had refused to wheel water, or had allowed wheeling only after protracted negotiations. (*Metropolitan Water District v. Imperial Irrigation District* (2000) 80 Cal.App.4th 1403, 1409 (*Metropolitan*).)

The Legislature recognized the sale of excess water could be a source of income for farmers while also promoting efficient use of a scarce resource. To effectuate these goals, the Wheeling Statutes prohibit state, regional, or local agencies from withholding use of their water conveyance systems by others provided that unused wheeling capacity is available and fair compensation is paid to the conveyance owner. (*Metropolitan*, *supra*, 80 Cal.App.4th at p. 1409.)

8

Section 1810 states, in relevant part:  "Notwithstanding any other provision of law, neither the state, nor any regional or local public agency may deny a bona fide transferor of water the use of a water conveyance facility which has unused capacity, for the period of time for which that capacity is available, if fair compensation is paid for that use . . . ."  Section 1811, subdivisions (c) and (d) define the terms "fair compensation" and "replacement costs" as follows:  "(c) 'Fair compensation' means the reasonable charges incurred by the owner of the conveyance system, including capital, operation, maintenance, and replacement costs, increased costs from any necessitated purchase of supplemental power, and including reasonable credit for any offsetting benefits for the use of the conveyance system.  [¶]  (d) 'Replacement costs' means the reasonable portion of costs associated with material acquisition for the correction of irreparable wear or other deterioration of conveyance facility parts that have an anticipated life that is less than the conveyance facility repayment period and which costs are attributable to the proposed use."

Section 1812 states:  "The state, regional, or local public agency owning the water conveyance facility shall in a timely manner determine the following:  [¶]  (a) The amount and availability of unused capacity.  [¶]  (b) The terms and conditions, including operation and maintenance requirements and scheduling, quality requirements, terms or use, priorities, and fair compensation."

Section 1813 specifies review under the Wheeling Statutes:  "In making the determinations required by this article, the respective public agency shall act in a reasonable manner consistent with the requirements of law to facilitate the voluntary sale, lease, or exchange of water and shall support its determinations by written findings.  In any judicial action challenging any determination made under this article the court shall consider all relevant evidence, and the court shall give due consideration to the purposes and policies of this article.  In any such case the court shall sustain the determination of the public agency if it finds that the determination is supported by substantial evidence."

9

## Metropolitan

The *Metropolitan* decision, involving wheeling rate setting by the Metropolitan Water District, is heavily cited and relied on by both sides. We discuss it in detail, though stark differences exist between the Metropolitan Water District and the two districts involved in the present controversy. The parties are not identically situated—the lead challenger in *Metropolitan* is a member agency—but the opinion considers issues and announces principles relevant to the present case.

The plaintiff Metropolitan Water District supplies 60 percent of the water used in Southern California. It is comprised of 27 member agencies, 14 cities, 12 municipal water districts, and one county water authority. The district is governed by a 51-member board of directors. Each member agency is entitled to one director and may appoint an additional director for every 3 percent of the total assessed valuation of the district's service area within the member agency. Voting shares are also based on assessed valuation. The board of directors sets policy and guides the actions of the district. (*Metropolitan*, *supra*, 80 Cal.App.4th at pp. 1415-1416.)

Approximately 75 percent of the district's revenue is generated through rates charged to supply water to its member agencies. Member agencies pay a fixed rate for each acre-foot of water delivered, which does not depend on the portions of the facilities used or the distance the water travels. The district estimated 85 percent of its costs are fixed and unavoidable, regardless of how much water is sold. (*Metropolitan*, *supra*, 80 Cal.App.4th at pp. 1416-1417.) Member agencies pay for these fixed costs of the district's conveyance system in a "bundled full-service rate." The agencies purchase water from the district as needed and are not required to purchase any set amount. (*Id*. at p. 1417.)

The district owns and operates a massive water conveyance system. To finance the system, including future projects, the district issued bonds. Debt service and operation and maintenance costs for the system are included in the water rates charged to

member agencies.  In addition, the district is pursuing water conservation programs, the costs of which are included in the fixed rate for water purchased by member agencies. (*Metropolitan*, *supra*, 80 Cal.App.4th at p. 1417.)

The district's board of directors adopted a fixed wheeling rate for its member agencies during nonshortage periods of $141 per acre-foot of untreated water.  All of the member agencies, except San Diego County Water Authority, voted to adopt the fixed rate.  (*Metropolitan*, *supra*, 80 Cal.App.4th at p. 1418.)  The wheeling rate is based on the amount of water transported without regard to the source of the water, the facilities used, or the distance the water travels.  The rate is based on the same transmission-related costs that the district includes in the rates it charges for the water it sells to member agencies. These transmission-related charges compensate the district for its capital investment and system-wide costs.  The wheeling rate of $141 per acre-foot equals the rate charged to member agencies purchasing the district's water less the costs of the water.  (*Id*. at pp. 1419-1420.)

However, "The wheeling rate applies only to member agencies.  Rates for entities other than member agencies are to be established by the Metropolitan Water District Board of Directors on a case-by-case basis 'consistent with applicable law, [the Metropolitan Water District resolution adopting the fixed wheeling rate], and the Wheeling Principles adopted by the [Metropolitan Water District] Board [of Directors]." (*Metropolitan*, *supra*, 80 Cal.App.4th at p. 1420.)

In setting the rates the district concluded member agencies receiving comparable service must pay comparable costs for the service; "wheeling transactions should not cause harm, in terms of reliability, quality or financial impact, on nonparticipant member agencies; wheeling charges must fully recover properly allocable fixed and variable costs of conveying water through the Metropolitan Water District's system; and in short, 'if a member agency purchasing water from [the Metropolitan Water District] pays for the fixed, unavoidable costs of the system, including transmission and storage and supply, in

11

a "bundled" full service rate, then member agencies using that same system for wheeling must contribute to [the Metropolitan Water District's] fixed costs on equivalent basis.' " (*Metropolitan*, *supra*, 80 Cal.App.4th at p. 1421.)

The district filed suit against dissenting San Diego County Water Authority and several other parties to validate its wheeling rate. The trial court, after considering the Wheeling Statutes, determined as a matter of law that the district could not set a fixed wheeling rate in advance of a particular transaction, without regard to the nature of the specific proposal. The court also found the district could not include system-wide costs in calculating its wheeling rate. The court entered judgment against Metropolitan Water District and in favor of the defendants. (*Metropolitan*, *supra*, 80 Cal.App.4th at pp. 1408, 1422-1423.)

The appellate court reversed. The court first considered whether the Wheeling Statutes mandate that a water conveyance facility owner recover reasonable capital, operation, and maintenance costs incurred only with respect to the particular facilities used in the wheeling transaction. The parties dubbed such a calculation "point to point." (*Metropolitan*, *supra*, 80 Cal.App.4th at p. 1426.)

After carefully considering both the statutory language and legislative intent, the court determined neither supported the conclusion that, as a matter of law, system-wide costs could not under any circumstances be included in a wheeling rate calculation. (*Metropolitan*, *supra*, 80 Cal.App.4th at p. 1427.) The court noted that had the Legislature intended to limit recoverable capital, operation, and maintenance costs to actual costs, it would have used specific language to that effect. (*Id*. at p. 1430.)

The court also reasoned that, under the statutes, a water conveyance system owner is entitled to reasonable charges it incurs for the use of the system. Giving the word incurred its usual and ordinary meaning, the court concluded that "charges incurred" refers to the costs a person becomes subject to or liable for because of an act or transaction. (*Metropolitan*, *supra*, 80 Cal.App.4th at at p. 1431.) Therefore, the fair

12

compensation the owner is entitled to for wheeling "includes reasonable capital, maintenance and operation costs occasioned, caused, or brought about by 'the use of the conveyance system.' (§ 1811, subd. (c).) 'Fair compensation' (§ 1810) includes charges the owner, in this case the Metropolitan Water District, becomes subject to or liable for in using the 'conveyance system' (§ 1811, subd. (c)) to wheel water when it has unused capacity." (*Id*. at p. 1431.)

Finally, the court rejected the defendants' contention that wheeling rates must be determined on a case-by-case basis as transactions are proposed. To the contrary, determining a fixed rate for wheeling by member agencies in advance of a particular transaction did not violate the timeliness requirement of section 1812. (*Metropolitan*, *supra*, 80 Cal.App.4th at p. 1434.)

### The Present Case

*Metropolitan* figures prominently in the trial court's reasoning and the arguments of both parties. The trial court thought *Metropolitan* informative but not dispositive of the issues before it, " because the facts are distinguishable. Whereas in *Metropolitan*, the dispute was between a conveyance owner and a member agency, the dispute here is between a conveyance owner and a third party would be purchaser of conveyance services. [¶] . . . The contention that only two choices exist—(1) that the Wheeling Statutes allow Stockton East to charge Central for its proportionate use of the [the conveyance system], or instead (2) that Stockton East is limited to charging only the incremental cost incurred to wheel water for Central—is rejected. This court does not read the Wheeling Statutes as permitting a conveyance system owner to essentially capture dependent agencies, nor does this court read the relevant provisions as limiting Stockton East to only incremental marginal costs."

Stockton East and Cal Water insist that "Nothing in the Wheeling Statutes justifies treating 'member agencies' or system co-owners any differently from any so-called 'third party' invoking the Wheeling Statutes. That [*Metropolitan*] . . . involved 'member

13

agencies' had nothing to do with the opinion's decision or analysis of the statutory language. [Citation.] Again, any factual findings about whether or not Cal Water and Central are member agencies are wholly irrelevant to the methodology legal issue."

Stockton East and Cal Water read *Metropolitan* too narrowly. From the outset, *Metropolitan* outlined the part the member agencies played in the district's decision-making process, including the setting of wheeling rates. Member agencies were represented on the district's board of directors. (*Metropolitan*, *supra*, 80 Cal.App.4th at pp. 1415-1417.) *Metropolitan* also observed that "The wheeling rate applies only to member agencies. Rates for entities other than member agencies are to be established by the Metropolitan Water District Board of Directors on a case-by-case basis 'consistent with applicable law . . . and the Wheeling Principles adopted by the [Metropolitan Water District] Board [of Directors]." (*Id*. at p. 1420.)

To suggest the member agency status of the challengers in *Metropolitan* had nothing to do with the court's analysis is to ignore part of the court's analysis. In rejecting the argument that "it would be 'illogical and unreasonable' to allow the Metropolitan Water District to pass past costs on to 'present users' '[s]ince no present transferor had any role in causing [the Metropolitan Water District] to incur those past costs,' " the court observed: "The argument is somewhat unclear. However, the 'present users' in question are member agencies of the Metropolitan Water District, to whom the wheeling rate applies. Moreover, those member agencies as such did have a role in 'causing' the Metropolitan Water District, through its board of directors, to incur the costs of developing the infrastructure that serves the member agencies; an infrastructure that is utilized in wheeling water." (*Metropolitan*, *supra*, 80 Cal.App.4th at p. 1431.)

Thus, the court in *Metropolitan* recognized that nonmember agencies stand in a different relationship to the district than members. Whether that should matter in setting rates can be debated, but the *Metropolitan* court considered the difference between the two categories of users significant. Stockton East and Cal Water argue that under the

14

Wheeling Statutes and *Metropolitan* the court was required to find its wheeling rates based on charging pro rata for system-wide capital, operation, and maintenance costs constituted "fair compensation" under section 1811, subdivision (c). According to Stockton East and Cal Water, *Metropolitan* "cannot be disregarded simply because it involved the setting of a wheeling rate for the 27 'member agencies' of the Metropolitan Water District. A wheeling rate is based on the *owner's costs*, not the user's identity. Distinguishing between users who directly participated in a system's creation and those who did not makes no sense." Stockton East and Cal Water theorize that requiring a lower rate for nonparticipants would encourage agencies to refuse to participate in the creation of a conveyance system. "That sort of gamesmanship—would give users a free ride and discourage sorely needed investment in infrastructure—cannot be sound public policy and is not provided for in the Wheeling Statutes."

In rejecting Stockton East's valuation calculation, the trial court found Stockton East "may not effectively capture Central's members and compel Central and its members to pay a *pro rata* share of Stockton East's fixed costs the same as Stockton East's own ratepayers and member agencies. Such action is contrary to the Legislative purposes evidenced in the Wheeling Statutes. At a minimum, Stockton East's insistence on allocating a *pro rata* share of capital costs including debt service incurred to construct its conveyance system is inconsistent with the Legislature's plain policy directive that rates promote or facilitate the voluntary sale, lease, or exchange of water within the meaning of . . . section 1813." After considering the Wheeling Statutes together, the court determined the Legislature "intended to maximize public benefits—here, to promote the efficient conveyance/distribution/use of water. That is, facilitation of wheeling is expressly identified as a policy goal. In this light, the Legislature cannot be said to have sought gouging."

As *Metropolitan* pointed out, "The Legislature did not enact a fair compensation *calculation formula*." (*Metropolitan*, *supra*, 80 Cal.App.4th at p. 1431.) Finding the

15

Legislature did not specifically define capital, operation, and maintenance costs in section 1811, subdivision (c), the court turned to the legislative history. The court found the Legislature's goal in enacting the Wheeling Statutes was to remove institutional barriers to wheeling transactions. Concern that facility owners would deny access to their systems or engage in protracted negotiations over wheeling prompted the legislation. However, the court found no evidence the Legislature acted out of concern that facility owners were blocking wheeling transactions by demanding unreasonable prices for access. Nor was there any evidence the Legislature chose to pursue a market-based approach that allowed buyers and sellers to determine the price of water. (*Id.* at pp. 1432-1433.)

Specifically, the *Metropolitan* court found "the Legislature did not intend that the impact of the Wheeling Statutes should be to cause a water conveyance system owner to lose money or to subsidize wheeling transfers. Moreover, no legislative report contains a single paragraph, sentence, or clause which suggests in any fashion that system-wide costs could not be assessed. In other words, there is no admissible historical evidence the Legislature intended that reasonable system-wide costs could not under any circumstances be considered in developing a wheeling transaction fee." (*Metropolitan*, *supra*, 80 Cal.App.4th at p. 1433.) The propriety of the costs would be determined in a hearing conducted under section 1813. (*Ibid.*)

Here, the trial court rejected the interpretation that a conveyance owner may compel a nonmember agency to pay a wheeling rate calculated on the basis of a strict proportionate share of capital, overhead, maintenance, and other fixed or ongoing costs. The court stated: "These factors are fairly to be considered, but the Wheeling Statutes are not reasonably construed as permitting the conveyance owner to simply total its costs and force a *pro rata* allocation in all cases. A conveyance owner might be able to do this with a member agency, but it is not reasonable to do so with a non member." We find the trial court's analysis persuasive and consistent with *Metropolitan*.

16

Stockton East and Cal Water also contend the trial court made a variety of erroneous factual assumptions. According to Stockton East and Cal Water, the underpinning of the trial court's ruling, that Stockton East was charging exorbitant rates, was a factual matter that was never tried. Stockton East and Cal Water also claim the trial court's finding that Central was an "outsider" in the creation of the water system was in error.

We uphold the trial court's factual determination if supported by substantial evidence. Any evidentiary conflicts must be resolved in favor of the prevailing party; we do not reweigh the evidence considered by the trial court. (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 631; *San Diego Unified School Dist. v. Commission on Professional Competence* (2013) 214 Cal.App.4th 1120, 1142.)

As we have discussed, the trial court found Stockton East based its wheeling rate on proportional cost allocations. The parties presented evidence as to Stockton East's method of setting its wheeling rates, evidence the court considered in making its ruling. The court did not find Stockton East was charging "exorbitant" rates; the court found Stockton East's "rates are demonstrably unreasonable inasmuch as they run counter to any 'real-world' analysis of competitive pricing." Stockton East had the opportunity throughout the litigation to present evidence in support of its rates; it cannot complain on appeal that this constitutes a factual matter that was never tried.

The trial court found "the Wheeling Statutes allow Stockton East to consider charges incurred by the owners . . . . However, Stockton East must consider also the fact that Central is not a member agency, and was not included in the decision to construct the [the water conveyance system]." Stockton East seizes on the court's comment that Central was not included in the decision to construct the conveyance system, arguing there was no trial or evidentiary hearing exploring Central's role in "the design, creation, and financing of Stockton East's system." Not every isolated comment by a court constitutes the ratio decidendi of the case. We focus on facts deemed material and

17

determine the contested decision based on them.  (See generally Goodhart, *Determining the Ratio Decidendi of a Case* (1930) 40 Yale L.J. 161.)  The court's comments regarding Central's role in the construction of the conveyance system were not the basis for its ruling.  Instead, the court observed that Central was not a member agency, which distinguished the factual situation from that in *Metropolitan*.  Substantial evidence supports the trial court's determination, and we find no error.

## DISPOSTION

The trial court's decision is supported by substantial evidence and correctly applies the relevant principles of law; we affirm.  Central shall recover costs on appeal.


<u>            RAYE            </u>, P. J.


We concur:


<u>       BLEASE        </u>, J.


<u>       HULL          </u>, J.

Filed 1/25/17

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| CENTRAL SAN JOAQUIN WATER CONSERVATION DISTRICT,<br><br>      Plaintiff, Cross-defendant and Respondent,<br><br>  v.<br><br>STOCKTON EAST WATER DISTRICT,<br><br>      Defendant, Cross-complainant and Appellant;<br><br>CALIFORNIA WATER SERVICE COMPANY,<br><br>      Intervener and Appellant. | C072218<br><br>(Super. Ct. No. 39201000234681CUMCSTK)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION<br><br>[NO CHANGE IN JUDGMENT] |

APPEAL from a judgment of the Superior Court of San Joaquin County, Lesley D. Holland, J.  Affirmed.

Herum\Crabtree, Herum\Crabtree\Suntag, Jeanne M. Zolezzi, Alexis K. Stevens, and William R. Carlson for Defendant, Cross-complainant and Appellant.

Manatt, Phelps & Phillips, George M. Soneff and Benjamin G. Shatz for Intervener and Appellant.

Downey Brand, M. Max Steinheimer, David R.E. Aladjem, Anthony L. Vignolo, Amanda Pearson; and Reid Roberts for Plaintiff, Cross-defendant and Respondent.

1

THE COURT:

The opinion in the above-entitled matter filed on December 27, 2016, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered. There is no change in judgment.


BY THE COURT:


        RAYE        , P. J.


        BLEASE      , J.


        HULL        , J.