Filed 12/23/24  Rosedale-Rio Bravo Water Storage Dist. v. Buena Vista Water Storage Dist. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| ROSEDALE-RIO BRAVO WATER STORAGE DISTRICT,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>BUENA VISTA WATER STORAGE DISTRICT et al.,<br><br>Defendants and Respondents. | H051858<br>(Santa Clara County<br>Super. Ct. No. 23CV413563) |

## I.  INTRODUCTION

Appellant Rosedale-Rio Bravo Water Storage District (Rosedale) seeks a declaration that it has a right to move Kern River water previously used for irrigation and stock water on ranch lands owned by Rosedale downstream through the Kern River, through the Isabella Dam and reservoir, and into the channel of the Kern River to flow downstream for delivery to Rosedale for groundwater recharge.  Rosedale's complaint for declaratory relief names as defendants (respondents herein) the City of Bakersfield, Kern Delta Water District, North Kern Water Storage District, Kern County Water Agency, and Buena Vista Water Storage District.  Respondents collectively have a contractual right to operate the capacity of the Isabella Dam and reservoir to store and convey water, through their agent, defendant L. Mark Mulkey, the Kern River Water Master.

Respondents demurred to the complaint on the ground that Rosedale had failed to exhaust its administrative remedy under the wheeling statutes, Water Code section 1810 et seq.[1]  The trial court agreed with respondents, sustained the demurrers without leave to amend, and entered judgment in favor of respondents.

On appeal, Rosedale contends that the trial court erred because the wheeling statutes do not apply to its claim that it has a right to move its ranch land water through the Isabella Dam and reservoir downstream for delivery to Rosedale for groundwater recharge.  For reasons that we will explain, we find no merit in Rosedale's contentions and we will affirm the judgment.

## II.  THE WHEELING STATUTES

The term "[w]heeling" refers to the transfer of water by means of water conveyance facilities.  (*Central Delta Water Agency v. State Water Resources Control Bd*. (2004) 124 Cal.App.4th 245, 266.)  Thus, "[t]he use of a water conveyance facility by someone other than the owner or operator to transport water is referred to as 'wheeling.' " (*Metropolitan Water Dist. v. Imperial Irrigation Dist.* (2000) 80 Cal.App.4th 1403, 1407.)  "Since 1980, it has been the declared policy of this state to facilitate the voluntary transfer of water.  (§ 109, subd. (a).)" (*Id.* at p. 1409.)

"The wheeling statutes (Water Code, § 1810 et seq.) further the declared ' "policy of the state to facilitate the voluntary sale, lease, or exchange of water or water rights in order to promote efficient use." ' [Citation.]  With limited exceptions, a public agency with unused capacity in its water conveyance facility may not deny a water transferor the use of the conveyance facility 'if fair compensation is paid for that use.' (Wat. Code, § 1810.)[2]  . . . [¶]  The owner of a water conveyance facility determines the amount of

---

[1] All statutory references are to the Water Code unless otherwise indicated.

[2] Section 1810 provides in part:  "Notwithstanding any other provision of law, neither the state, nor any regional or local public agency may deny a bona fide transferor (continued)

fair compensation.  (Wat. Code, § 1812, subd. (b).)[3]"  (*San Diego County Water Authority v. Metropolitan Water Dist.* (2017) 12 Cal.App.5th 1124, 1144 (*San Diego County Water*).)

"In making that determination, the owner must 'act in a reasonable manner consistent with the requirements of law to facilitate the voluntary sale, lease, or exchange of water and shall support its determinations by written findings.  In any judicial action challenging any determination made under this article the court shall consider all relevant evidence, and the court shall give due consideration to the purposes and policies of this article.  In any such case the court shall sustain the determination of the public agency if it finds that the determination is supported by substantial evidence.'  (Wat. Code, § 1813.)[4]"  (*San Diego County Water*, *supra*, 12 Cal.App.5th at p. 1144.)[5]

## III.  FACTUAL BACKGROUND

Our summary of the facts is drawn from the allegations of the complaint and the request*s* for judicial notice filed below.  In reviewing a ruling sustaining a demurrer

---

of water the use of a water conveyance facility which has unused capacity, for the period of time for which that capacity is available, if fair compensation is paid for that use, subject to the following [exceptions]."

[3] Section 1812 provides:  "The state, regional, or local public agency owning the water conveyance facility shall in a timely manner determine the following:  [¶]  (a) The amount and availability of unused capacity.  [¶]  (b) The terms and conditions, including operation and maintenance requirements and scheduling, quality requirements, term or use, priorities, and fair compensation."

[4] Section 1813 provides:  "In making the determinations required by this article, the respective public agency shall act in a reasonable manner consistent with the requirements of law to facilitate the voluntary sale, lease, or exchange of water and shall support its determinations by written findings.  In any judicial action challenging any determination made under this article the court shall consider all relevant evidence, and the court shall give due consideration to the purposes and policies of this article.  In any such case the court shall sustain the determination of the public agency if it finds that the determination is supported by substantial evidence."

[5] Rosedale's motion for judicial notice of the legislative history of the wheeling statutes, section 1810 et seq., is granted.  (Evid. Code, § 452, subd. (c).)

without leave to amend, we assume the truth of the properly pleaded factual allegations and the matters properly subject to judicial notice. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

"Rosedale is a California water storage district formed and existing pursuant to the California Water Storage District Law [section 39000 et seq.]." Between 2013 and 2018, Rosedale purchased ranch lands known collectively as the Onyx Lands in the South Kern River Valley. The purchase included the ranch lands' associated water rights, which were described as "pre-1914 appropriative rights developed and perfected through the diversion and use of water from the South Fork Kern River on the Onyx Lands." Rosedale has named these particular water rights its "SF Water Rights." Rosedale's predecessors in interest in the South Kern River Valley used the water available under the SF Water Rights for irrigation and stock water.

Rosedale has developed a project known as the Onyx Project for the purpose of obtaining groundwater sustainability in Rosedale. Under the Onyx Project, Rosedale intends to move the water no longer used for irrigation and stock water on the fallow Onyx Lands downstream through the Kern River and the Isabella Dam to the lower Kern River. Rosedale's Onyx Lands water will then be diverted from the lower Kern River to the valley floor where the water may be used for groundwater recharge within the boundaries of Rosedale.

Rosedale prepared an environmental impact report for the Onyx Project, which is being litigated by defendants. However, the parties entered into agreements that allowed Rosedale to conduct a pilot Onyx Project in 2022. During the pilot project, the Kern River Water Master and the City of Bakersfield were able to separately account for Rosedale's Onyx Lands water flowing through the system.[6] Buena Vista Water Storage District terminated the Onyx Project after three months.

_____

[6] "A district, as defined in subdivision (b) of Section 22080, may appoint one or (continued)

4

"Going forward, Rosedale plans to move the [Onyx Lands water] pursuant to its rights associated with the Pioneer Project, its right to utilize the natural channel of the Kern River, or pursuant to other agreements with the Defendants." Rosedale is a "Recharge Participant" in the Pioneer Project, which is managed by the Kern County Water Agency for the purpose of water recovery and spreading in the Kern River alluvial fan of the valley floor.

To implement the Onyx Project, Rosedale needs to convey its Onyx Lands water through the Kern River; to have the Kern River Water Master recognize Rosedale's Onyx Lands water in the Isabella Reservoir and to treat the water as not available to defendants; and to have defendants recognize Rosedale's water as belonging to Rosedale and not to divert it.

Rosedale requested cooperation from the Kern River Water Master with its implementation of the Onyx Project. The Water Master responded that there was insufficient information about "the foundational details for commencing the Project and coordination with all existing public water projects and programs, facilities, and operational procedures for the daily administration of the Kern River. Therefore, it is not possible to know how and in what manner your request to modify the current daily Kern River operations can be considered and addressed."

### IV. PROCEDURAL BACKGROUND

#### A. *The Complaint*

On February 10, 2023, Rosedale filed a verified complaint for declaratory and injunctive relief. The complaint named as defendants the City of Bakersfield, Kern Delta Water District, North Kern Water Storage District, Kern County Water Agency,

---

more watermasters to regulate the use of water within the district." (§ 22081.) According to the draft environmental impact report attached as an exhibit to the complaint, "the Kern River Watermaster coordinates water releases, as required, with the U.S. Army Corps of Engineers . . . who is responsible for the operation of the Isabella Dam."

5

Buena Vista Water Storage District, and L. Mark Mulkey, the Kern River Water Master. Rosedale has referred to the defendants, other than Mulkey, collectively as the "Kern River Interests."[7]

Rosedale alleges that Mulkey "is the contractually designated Kern River Watermaster, an agent of the Kern River Interests for purposes of coordinating the storage of Kern River water in Isabella Reservoir, and the movement of Kern River water through Isabella Reservoir, and accounting for the division of Kern River water between the Kern River Interests consistent with their claimed water rights."

Rosedale alleged that defendant Kern River Interests claim pre-1914 appropriative rights to divert water from the Kern River below the Isabella Reservoir and to store water in the Isabella Reservoir. As the Kern River Watermaster, defendant Mulkey "quantifies, and historically has quantified, the amount of water available to each of the Kern River Interests pursuant to their respective claimed rights on a daily basis, based on the calculated flow of the Kern River at First Point of Measurement."

The complaint includes a single cause of action for declaratory and injunctive relief. Rosedale seeks a declaration that: "a) Rosedale holds valid pre-1914 appropriative rights on South Fork of the Kern River, as set forth in Paragraphs 22-31 of this Complaint. [¶] b) Rosedale can change the point of diversion and place of use for its pre-1914 appropriative rights provided it does not injure others, which includes the right to allow the free flow of the SF Water Rights to and through Isabella Reservoir, and into the channel of the Kern River to flow downstream for direct delivery to Rosedale, or for intentional recharge by Rosedale or on Rosedale's behalf. [¶] c) Rosedale's plan to move the water includes reasonable conditions and elements to prevent injury to others.

---

[7] Defendant Mulkey has not appeared in these appellate proceedings. Rosedale states in its opening brief that "[d]uring the pendency of the case Mr. Mulkay retired and the current Watermaster is Art Chianello." This court granted Rosedale's unopposed motion to substitute Mr. Chianello as respondent in place of Mr. Mulkey.

[¶] d) Rosedale has rights pursuant to the Pioneer Participation Agreement and [joint operating] Agreement No. 96-356, as amended, to convey to (via canals and riverbed) and recharge the SF Water in facilities within the Pioneer Project Area, which includes the Kern River Channel east of the City[ of Bakersfield's] 2800 Acres extending to the Rocky Point Weir, the Truxtun Lakes recharge area, and the Lakes at the Park at River Walk, among other areas."

Additionally, Rosedale seeks injunctive relief, as follows: "Rosedale requests that this Court issue an injunction ordering the Defendants not to interfere with the change in place of use of Rosedale's pre-1914 SF Water rights, including but not limited to the following: [¶] a) An order preventing the Defendants, and each of them, from interfering with the free flow of the SF Water Rights to and through Isabella Reservoir, and into the channel of the Kern River to flow downstream for direct delivery to Rosedale, or for intentional recharge by Rosedale or on Rosedale's behalf. [¶] b) An order directing the Kern River Watermaster to account for the SF Water that Rosedale allows to flow to and through Isabella Reservoir and the delivery of such water downstream as directed by Rosedale, or alternatively, an order that the Kern River Watermaster refrain from including in its allocation of water to the other Defendants, Rosedale's SF Water moved downstream into and through Isabella as part of the Onyx Project. [¶] c) An order preventing the Defendants from interfering with Rosedale's lawful exercise of its rights to use certain facilities and lands under the Pioneer Participation Agreement and [joint operating] Agreement No. 96-356, as amended."

## B. *Demurrer of Defendants Kern River Interests*

Defendants Kern River Interests demurred to the complaint on the grounds that Rosedale had failed to exhaust administrative remedies and also had failed to state facts sufficient for a cause of action for declaratory relief.

In support of its argument that Rosedale had failed to exhaust administrative remedies, the Kern River Interests requested judicial notice of an agreement signed in

7

1964 between the United States, the owner of Isabella Dam, "with local districts including defendants Buena Vista and North Kern (for itself and other entities that are now defendants) and the predecessors of defendant [Kern County Water District] concerning the use of storage capacity in Lake Isabella." According to the Kern River Interests, under the terms of the 1964 agreement "multiple defendants agreed to pay the United States several million dollars in exchange for the right to operate Isabella's capacity to store and convey water."

The Kern River Interests argued that pursuant to the administrative process provided by the wheeling statutes, sections 1812 and 1813, Rosedale was required to apply to the Kern River Interests, as the operators of the storage capacity of Lake Isabella, to use Lake Isabella's unused storage capacity for the purpose of conveying Rosedale's project water through the Isabella reservoir and dam. The Kern River Interests also relied on decisions in which judicial review followed administrative proceedings under the wheeling statutes.

Since Rosedale failed to allege that it had applied to defendants under the wheeling statutes for approval to use excess storage capacity in the Isabella reservoir to convey its water, the Kern River Interests contended that Rosedale had failed to exhaust administrative remedies and could not state a cause of action for declaratory relief.

Alternatively, the Kern River Interests argued that Rosedale had failed to allege that it had any rights to move water through the Isabella reservoir, since Rosedale only alleged two rights: (1) rights under a 1902 arbitration agreement pertaining to water upstream from the Isabella Dam; and (2) rights under the Pioneer Project that did not include any rights to move water through the Isabella Dam. The Kern River Interests therefore requested that its demurrer be sustained without leave to amend.

### C. *Demurrer of City of Bakersfield*

Defendant City of Bakersfield demurred to the complaint on the additional ground that a declaratory relief action is not the proper procedure to review an administrative

8

action, since the action or inaction of a public agency may be challenged only by way of a petition for writ of mandate.

### D. *Opposition to Demurrers*

Rosedale argued in opposition to the demurrer of the Kern River Interests that the wheeling statutes do not apply to Rosedale, for several reasons: (1) the wheeling statutes at section 1812 expressly do not apply to Isabella Dam because it is owned by the United States; (2) Isabella Dam and reservoir do not constitute a water conveyance facility within the meaning of the wheeling statutes because the dam merely stores water that would otherwise flow downstream through the Kern River channel; (3) although Rosedale has not requested a right to use the storage capacity of the Isabella reservoir, it could do so under the terms of the 1964 agreement; (4) the Water Code prohibits the Kern River Water Master from storing Rosedale's water in the Isabella reservoir; and (5) Rosedale has pleaded water rights that allow it to convey water through the natural channel of the Kern River and through the Isabella dam.

Rosedale rejected defendant City of Bakersfield's contention that it could not bring a cause of action for declaratory relief, arguing that it was not challenging an agency decision since none had been made, and instead properly sought a declaration with respect to the "[Kern County] Watermaster and the Defendants regarding the right to move the SF Water down the natural channel of the Kern River and through Isabella Reservoir to the lower Kern River channel."

### E. *The Trial Court's Order and Judgment*

In the December 8, 2023 order, the trial court sustained the demurrers of the Kern River Interests and the City of Bakersfield. In so ruling, the trial court granted the Kern River Interests' request for judicial notice of the 1964 agreement between the United States and defendants and their predecessors concerning the use of the storage capacity of Lake Isabella. The trial court also granted Rosedale's request for judicial notice of the

federal Flood Control Act of 1944 (Public Law No. 534, ch. 665 (Dec. 22, 1944) 58 Stat. 887).

In sustaining the demurrers, the trial court rejected Rosedale's contention that the wheeling statutes do not apply to Rosedale's claim that the Kern River Interests refused to recognize its rights to move its SF Water through the Isabella Dam and reservoir and to have the SF Water released to flow downstream. The trial court reasoned that "Water Code section 1810 expressly governs such a situation as it provides that a regional or local public agency may not deny a bona fide transferor of water the use of a water conveyance facility which has unused capacity, for the period of time for which that capacity is available, if fair compensation is paid for that use."

The trial court also rejected Rosedale's contention that the wheeling statutes do not apply because the United States, not the Kern River Interests, is the owner of the Isabella Dam, finding that section 6005 provides that the owner of a dam or reservoir includes a municipal corporation, public agency, district or person who "controls, operates, maintains, or manages a dam or reservoir."[8] Since Rosedale had alleged that the Kern River Interests through their agent Mulkey exercised some control over the Isabella dam and reservoir, the trial court determined that they were owners for purposes of applying the wheeling statutes.

Further, the trial court rejected Rosedale's contention that the Isabella Dam and reservoir did not constitute a water conveyance facility within the meaning of the wheeling statutes. The court noted that Rosedale's allegations show that it is asking the

---

[8] Section 6005 is included in the definitions pertaining to supervision of dams and reservoirs (Div. 3, § 6000 et seq.) and provides in part: " 'Owner' includes any of the following who own, control, operate, maintain, manage, or propose to construct a dam or reservoir: [¶] (a) The state and its departments, institutions, agencies, and political subdivisions. [¶] (b) Every municipal or quasi-municipal corporation. [¶] (c) Every public utility. [¶] (d) Every district. [¶] (e) Every person. [¶] (f) The duly authorized agents, . . . of any of the foregoing. [¶] (g) Receivers or trustees appointed by any court for any of the foregoing. [¶] 'Owner' does not include the United States."

Kern River Interests to allow Rosedale's water "to travel through and flow out of Isabella Dam and Reservoir." Since Rosedale seeks to convey its SF Water downstream through the Isabella Dam and reservoir, the trial court determined that the wheeling statutes applied to the parties' dispute.

The trial court therefore concluded that the administrative remedy provided by the wheeling statutes applied. Because Rosedale had not sought relief under the administrative remedy, the trial court ruled that it lacked jurisdiction. In the December 8, 2023 order the trial court sustained the demurrers without leave to amend, dismissed the action without prejudice, and entered judgment in favor of defendants.

## V. DISCUSSION

On appeal, Rosedale contends that the trial court erred in ruling that Rosedale's action for declaratory relief was barred for failure to exhaust administrative remedies for several reasons: (1) the wheeling statutes do not apply because the Kern River Interests are not owners of the Isabella Dam and reservoir under section 6005; (2) the wheeling statutes do not apply because the United States is the owner of the Isabella Dam and reservoir; (3) the Isabella Dam and reservoir are not a water conveyance facility; and (4) leave to amend the complaint should have been granted.

We will begin our evaluation of the contentions on appeal with the standard of review applicable to a judgment of dismissal based upon an order sustaining a demurrer without leave to amend.

### A. *Standard of Review*

The standard of review on appeal from an order of dismissal after a demurrer is sustained without leave to amend is de novo. (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42*.*) In performing our independent review of the complaint, we assume the truth of all facts properly pleaded by the plaintiff. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6 (*Evans*).)

11

Additionally, "we give the complaint a reasonable interpretation, and read it in context." (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 (*Schifando*).) However, we do not assume the truth of " ' "contentions, deductions or conclusions of fact or law." ' " (*Evans*, *supra*, 38 Cal.4th at p. 6.) We may also consider matters that are subject to judicial notice and facts appearing in any exhibits attached to the complaint. (Code Civ. Proc, § 430.30, subd. (a); *Schifando*, *supra*, at p. 1081.)

"The 'failure to exhaust administrative remedies is a proper basis for demurrer.' [Citations.] A complaint is vulnerable to demurrer on administrative exhaustion grounds when it fails to plead either that administrative remedies were exhausted or that a valid excuse exists for not exhausting. [Citations.] A complaint is also vulnerable to demurrer on administrative exhaustion grounds where the complaint's allegations, documents attached thereto, or judicially noticeable facts indicate that exhaustion has not occurred and no valid excuse is alleged in the pleading to avoid the exhaustion requirement. [Citations.]" (*Parthemore v. Col* (2013) 221 Cal.App.4th 1372, 1379 (*Parthemore*).)

## B. *The Parties' Contentions*

Rosedale contends that the wheeling statutes, section 1810 et seq., do not apply because the Kern River Interests do not own the Isabella Dam and reservoir. Rosedale emphasizes that the wheeling statutes, at sections 1812 and 1810, expressly apply only to the state, regional, or local public agency owning the water conveyance facility. Since the United States constructed and owns the Isabella Dam and reservoir, Rosedale argues that the wheeling statutes do not apply to its claim to move its SF Water through the Isabella dam and reservoir.

Rosedale further argues that the trial court erred in ruling that the definition of dam ownership in section 6005 applied such that the Kern River Interests may be deemed owners of the Isabella Dam and reservoir for purposes of the wheeling statutes. According to Rosedale, section 6005 is located in Division 3 of the Water Code, which regulates dam and reservoir safety, while the wheeling statutes, section 1810 et seq., are

located in Division 2 of the Water Code, which regulates the appropriation and joint use of water. Since the two divisions of the Water Code are unrelated, Rosedale maintains that the definition of " '[o]wner' " in section 6005 cannot be applied to interpret the wheeling statutes. In addition, Rosedale contends that the Isabella Dam does not meet the definition of " '[d]am' " set forth in section 6002.[9]

Alternatively, Rosedale argues that the Isabella Dam and reservoir do not constitute a water conveyance facility within the meaning of the wheeling statutes, section 1810 et seq., because it is commonly understood that dams do not convey water and a reservoir only stores water. Rosedale explains that "Rosedale seeks to have Defendants *not block the flow of Onyx Water in the natural channel of the Kern River by refusing to allow the Onyx Water to flow through the Dam*."

The Kern River Interests respond that the trial court did not err and Rosedale's arguments lack merit for several reasons. Regarding the significance of ownership, the Kern River Interests argue that the wheeling statutes, taken as a whole, apply to regional and local agencies capable of denying another party " 'the use of a water conveyance facility.' Based on their indisputable control over Isabella Dam's conveyance capacity, the Kern River Interests are in that position and the Wheeling Statutes thus apply here."

The Kern River Interests acknowledge that the term "owner" is included in the wheeling statutes at section 1811, subdivisions (c) and (e),[10] but assert that these

---

[9] Section 6002 provides: " 'Dam' means any artificial barrier, together with appurtenant works, which does or may impound or divert water, and which either (a) is or will be 25 feet or more in height from the natural bed of the stream or watercourse at the downstream toe of the barrier, as determined by the department, or from the lowest elevation of the outside limit of the barrier, as determined by the department, if it is not across a stream channel or watercourse, to the maximum possible water storage elevation or (b) has or will have an impounding capacity of 50 acre-feet or more."

[10] Section 1811, subdivision (c) provides: " 'Fair compensation' means the reasonable charges incurred by the owner of the conveyance system, including capital, operation, maintenance, and replacement costs, increased costs from any necessitated (continued)

provisions must be understood in the context of the statutory scheme as a whole to include regional and local agencies that control a water conveyance facility. The Kern River Interests also rely on the decision in *San Diego County Water*, *supra*, 12 Cal.App.5th 1124 for the proposition that interests other than fee title owners are allowed to charge fair compensation for wheeling water.

The Kern River Interests also reject Rosedale's contention that the Isabella dam and reservoir do not constitute a water conveyance facility within the meaning of the wheeling statutes. They point out that the dictionary definition relied on by Rosedale for the word "convey" includes "to transfer," and as alleged the Isabella Dam conveys water by transferring it from upstream to downstream.

### C. *Analysis*

Having carefully considered the parties' arguments, we determine that the allegations of Rosedale's complaint shows that Rosedale's proposed Onyx Project is subject to the wheeling statutes, section 1810 et seq. As we have noted, to implement its Onyx Project, Rosedale must transfer its Onyx Lands water through the Kern River downstream to the Isabella reservoir; have the Kern River Water Master recognize Rosedale's water from the Onyx Lands in the Isabella Reservoir and treat that water as not available to defendants; and have defendants recognize Rosedale's water as belonging to Rosedale and not divert it.

Rosedale also acknowledges in seeking declaratory relief that Mulkey "is the contractually designated Kern River Watermaster, an agent of the Kern River Interests for purposes of coordinating the storage of Kern River water in Isabella Reservoir, and

---

purchase of supplemental power, and including reasonable credit for any offsetting benefits for the use of the conveyance system." Section 1811, subdivision (e) provides: " 'Unused capacity' means space that is available within the operational limits of the conveyance system and that the owner is not using during the period for which the transfer is proposed and which space is sufficient to convey the quantity of water proposed to be transferred."

the movement of Kern River water through Isabella Reservoir, and accounting for the division of Kern River water between the Kern River Interests consistent with their claimed water rights."  Rosedale also alleges that Mulkey must separately account for Rosedale's Onyx Lands water that flows through the Isabella reservoir and dam before being diverted to recharge the groundwater within Rosedale's boundaries.

Accordingly, Rosedale recognizes in its allegations that the Kern River Interests, through their agent Kern River Water Master Mulkey, control the transfer of water through the Isabella dam and reservoir.  Rosedale requested that the Kern River Water Master cooperate with the implementation of the Onyx Project, but he responded that Rosedale provided insufficient information.  We therefore understand Rosedale to seek a declaration that the Kern River Interests, through their agent Kern River Water Master Mulkey, may not deny the use of the Isabella Dam and reservoir by the Onyx Project and must separately account for the Onyx Lands water flowing through the dam.

Consequently, we determine that Rosedale seeks declaratory relief that brings its proposed Onyx Project water transfers within the provisions of the wheeling statutes, which expressly provide that "[w]ith limited exceptions, a public agency with unused capacity in its water conveyance facility may not deny a water transferor the use of the conveyance facility 'if fair compensation is paid for that use.'  (Wat. Code, § 1810.)" (*San Diego County Water*, *supra,* 12 Cal.App.5th at p. 1144.)

We are not convinced by Rosedale's argument that the Kern River Interests are not owners of the Isabella Dam and reservoir and therefore the wheeling statutes do not apply.  We agree with the trial court that the definition of " 'owner' " in section 6005 applies to the Kern River Interests:  " 'Owner' includes any of the following who own, control, operate, maintain, manage, or propose to construct a dam or reservoir:  [¶] . . . [¶]  (b) Every municipal or quasi-municipal corporation.  [¶]  (c) Every public utility.  [¶] (d) Every district.  [¶]  (e) Every person.  [¶]  (f) The duly authorized agents . . . of any of the foregoing.  [¶] . . . [¶]  'Owner' does not include the United States."  (§ 6005.)

15

Although section 6005 is located in a different division of the Water Code than the wheeling statutes (§ 1810 et seq.), "[u]nder well-established canons of statutory construction, 'when the same word [or phrase] appears in different places within a statutory scheme, courts generally presume the Legislature intended the word [or phrase] to have the same meaning each time it is used.' [Citations.]" (*People v. Braden* (2023) 14 Cal.5th 791, 806.)

Moreover, as we have discussed, Rosedale seeks injunctive relief directing the Kern River Interests' agent, Kern River Water Master Mulkey, "to account for the SF Water that Rosedale allows to flow to and through Isabella Reservoir and the delivery of such water downstream as directed by Rosedale, or alternatively, an order that the Kern River Watermaster refrain from including in its allocation of water to the other Defendants, Rosedale's SF Water moved downstream into and through Isabella as part of the Onyx Project."

With these allegations, Rosedale recognizes that the Kern River Interests exert control over the release and allocation of the water that is transferred from the Isabella reservoir and dam to the Kern River for diversion downstream. For that reason, we determine that Rosedale has sufficiently alleged that the Kern River Interests are owners for purposes of the wheeling statutes pursuant to the definition of " '[o]wner' " in section 6005. Additionally, our construction comports with "the declared ' "policy of the state to facilitate the voluntary sale, lease, or exchange of water or water rights in order to promote efficient use." ' [Citation.]" (*San Diego County Water*, *supra*, 12 Cal.App.5th at p. 1144.)

We are also not convinced by Rosedale's argument that the Isabella Dam and reservoir are storage facilities that do not constitute a water conveyance facility within the meaning of the wheeling statutes, section 1810 et seq. A similar argument was rejected in *San Luis Coastal Unified School Dist. v. City of Morro Bay* (2000) 81 Cal.App.4th 1044, 1049 (*San Luis Coastal*): "It is true the statutory scheme makes no

16

mention of the use of water storage facilities.  To the extent, however, that storage facilities are an integral part of the water conveyance system, incidental use of the storage facilities will be necessary for the transportation of water.  Such necessary and incidental use of integrated storage facilities must be considered to be within the scope of the statutory scheme for the conveyance of water."  Moreover, a water conveyance system has been described as including "a dam, a tunnel, canals, improved natural creek channels, and a pipeline to transport water" from a reservoir to a water district's service areas.  (*Central San Joaquin Water Conservation Dist. v. Stockton East Water Dist.* (2016) 7 Cal.App.5th 1041, 1045.)

Rosedale's allegations indicate that the Isabella Dam and reservoir are an integral part of the water conveyance system for the Kern River, since as alleged the river water passes through the Isabella reservoir and dam before being diverted as allocated by the Kern River Water Master for use by the Kern River Interests.  (See *San Luis Coastal*, *supra*, 81 Cal.App.4th at p. 1049.)  Therefore, the Isabella Dam and reservoir constitute a water conveyance system within the meaning of the wheeling statutes, section 1810 et seq.

Having determined that the wheeling statutes apply in this case, we turn to the availability of an administrative remedy.  "[T]he rule is that where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act."  (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 292.)  The doctrine "is not a matter of judicial discretion, but is a fundamental rule of procedure . . . binding upon all courts."  (*Id.* at p. 293.)

"This court has explained that ' "[t]he exhaustion doctrine is principally grounded on concerns favoring administrative autonomy (i.e., courts should not interfere with an agency determination until the agency has reached a final decision) and judicial efficiency (i.e., overworked courts should decline to intervene in an administrative dispute unless absolutely necessary)."  [Citation.]  . . .  Therefore, '[u]ntil an available

"administrative procedure has been invoked and completed, there is nothing that the . . . court may review; it cannot interfere in the intermediate stages of the proceeding." [Citation.]' [Citation.]" (*Monterey Coastkeeper v. Monterey County Water Resources Agency* (2017) 18 Cal.App.5th 1, 12.)

The wheeling statutes provide an administrative procedure, as follows. "With limited exceptions, a public agency with unused capacity in its water conveyance facility may not deny a water transferor the use of the conveyance facility 'if fair compensation is paid for that use.' (Wat. Code, § 1810.) . . . [¶] The owner of a water conveyance facility determines the amount of fair compensation. (Wat. Code, § 1812, subd. (b).)" (*San Diego County Water* 12 Cal.App.5th at p. 1144.)

"In making that determination, the owner must 'act in a reasonable manner consistent with the requirements of law to facilitate the voluntary sale, lease, or exchange of water and shall support its determinations by written findings. In any judicial action challenging any determination made under this article the court shall consider all relevant evidence, and the court shall give due consideration to the purposes and policies of this article. In any such case the court shall sustain the determination of the public agency if it finds that the determination is supported by substantial evidence.' (Wat. Code, § 1813.)" (*San Diego County Water*, *supra*, 12 Cal.App.5th at p. 1144.)

The California Supreme Court has not formulated a general definition of what sort of procedure may constitute an administrative remedy because "[s]uch a question may vary among agencies and legislative schemes." (*Plantier v. Ramona Municipal Water Dist.* (2019) 7 Cal.5th 372, 383.) Here, the wheeling statutes provide for judicial review of the written findings by the owner of a water conveyance facility regarding determinations made pursuant to the wheeling statutes. (§ 1813.) Since Rosedale has not sought an administrative determination under the procedure provided by the wheeling statutes at section 1810 with respect to the implementation of its Onyx Project, Rosedale has failed to exhaust its administrative remedy. Therefore, the trial court did not err in

sustaining the demurrers on the ground of failure to exhaust administrative remedies. (See *Parthemore*, *supra*, 221 Cal.App.4th at p. 1379.)

## D. *Leave to Amend*

We understand Rosedale to contend that it should be granted leave to amend its complaint to clarify its allegations that the mere movement of water through the Isabella Dam does not implicate the wheeling statutes.

Where, as here, the trial court did not grant leave to amend, we review that ruling for abuse of discretion. (*Schifando*, *supra*, 31 Cal.4th at p. 1081.) "The plaintiff has the burden of proving that an amendment would cure the defect." (*Ibid*.) "[L]eave to amend is properly granted where resolution of the legal issue[ ] does not foreclose the possibility that the plaintiff may supply necessary factual allegations. [Citation.] If the plaintiff has not had an opportunity to amend the complaint in response to the demurrer, leave to amend is liberally allowed as a matter of fairness, unless the complaint shows on its face that it is incapable of amendment. [Citations.]" (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 747.)

Since we have concluded that the trial court properly sustained the demurrers of the Kern Party Interests and the City of Bakersfield on the ground of failure to exhaust administrative remedies, we further conclude that the trial court did not abuse its discretion in denying leave to amend. Rosedale has not shown how the complaint could be amended to show that Rosedale's claims are not subject to the administrative remedy provided by the wheeling statutes. (§ 1810 et seq.)

## VI. DISPOSITION

The December 8, 2023 order and judgment is affirmed. Costs on appeal are awarded to respondents.

19

_____

BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:

_____

DANNER, J.

_____

WILSON, J.

***Rosedale-Rio Bravo Water Storage District v. Buena Vista Water Storage District et al.***
**H051858**